### BROOKS SUPPLY CO. v. HINES et al.
(No. 9350.)

(Court of Civil Appeals of Texas. Ft. Worth. June 5, 1920. Rehearing Denied July 2, 1920.)

1. Sales ⟊417—Relative to special damages for nondelivery evidence shows notice of intended use.

Evidence in action for damages for nondelivery by seller of an oil drilling rig *held*, relative to special damages, consisting of extra cost in procuring another rig to drill a well to prevent forfeiture of a lease about to run out, to authorize inference that the seller was informed of the purpose for which the buyers desired the rig and of the necessity of prompt delivery.

2. Sales ⟊418(11)—That seller had notice in time for delivery of probable consequence of nondelivery, enough for special damages.

To make seller liable for special damages for nondelivery, it is enough that he had notice of the probable consequences of a breach after the contract was made, so long as it was in time to allow seller by due care to perform and prevent the damages.

3. Sales ⟊422—Enough that substance of special issue is proven.

The substance of the issue relative to special damages being whether the seller at the time of wrongful refusal to deliver had sufficient notice of the probable consequences of its refusal, it is enough that the evidence showed such notice after the making of the contract, though the special issue, answered in the affirmative, was in form whether the seller was informed at or before the making of the contract.

4. Appeal and error ⟊733—Assignment of error too general.

Assignment of error that the judgment for special damages is excessive, contrary to the law, and unsupported by the pleadings and testimony, is too general.

5. Sales ⟊417—Award of special damages supported by evidence.

Evidence *held* to support an award of $1,800 special damages, considering the item of interest, for nondelivery by seller of an oil-drilling rig.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by H. B. Hines and another against the Brooks Supply Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Jonette M. Bonner and Carrigan, Montgomery, Britain & Morgan, all of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellees.

CONNER, C. J. As finally presented and so far as is necessary to an understanding of our conclusions, this suit was prosecuted by defendants in error, H. B. Hines and H. A. Martin, against plaintiff in error, the Brooks Supply Company of Beaumont, Tex., for a refusal to deliver, in accordance with the terms of a certain contract, a certain oildrilling rig. The plaintiffs alleged that they had purchased the drilling rig referred to from the Brooks Supply Company of Beaumont for the sum of $4,000, to be paid as follows: $1,000 in cash and six notes of $500 each, drawing interest at the rate of 8 per cent., and payable upon 90-day periods; that the cash payment had been made at the time of making the contract, and the Brooks Supply Company shipped the rig to Iowa Park, Wichita county, where, by the terms of the contract, the rig was to be delivered; that upon the arrival of the rig at Iowa Park the bill of lading therefor was accompanied with a sight draft upon the plaintiffs for $3,000 cash, and that contrary to plaintiffs' insistence that the notes referred to be accepted, and which at the time were tendered, the Brooks Supply Company refused delivery of the rig without payment of said draft, thereafter converting the rig to its own use and benefit. The plaintiff thereupon sued for general and special damages.

The result of the trial was a judgment, predicated upon the answers of a jury upon special issues, for the plaintiffs in the sum of $751, with interest at the rate of 6 per cent. from September 12, 1917, and a further sum of $1,800 as special damages, making a total of $2,611.50. From this judgment, the Brooks Supply Company have prosecuted the present writ of error.

[1] Among other special issues, the court submitted the following:

"Did H. A. Martin tell the Brooks Supply Company at the time or before the rig was

purchased, that he intended to use the same immediately for the drilling of a well already contracted for on a lease owned by him and Hines in order to avoid a forfeiture of said lease?"

The issue, as quoted, conforms to the allegations of plaintiffs' petition on that subject, and the jury answered it, "Yes."

The principal contention of plaintiffs in error on this appeal is that the evidence did not justify the submission of the issue quoted, nor support the verdict and judgment for special damages. On the subject in question, H. A. Martin testifies as follows:

"I do not know whether or not I told Mr. Brooks or the Brooks Supply Company for what purpose I wanted that rig. I knew that I was in a hurry to get the rig, but I do not know whether I went into those details. I know that I told him that I was in a hurry and had to have the rig, I had a lease, and it was about to run out. I talked to him over the phone. I told him over the phone that my lease was about to run out, and if I did not get the rig there, I was liable to lose it, or something to that effect; I do not remember just the words I told him. I wanted them to release the rig so that I could remove it onto the lease out there. I did everything that I could to get the rig released; I tried to get the sheriff to get it, and he could not get it. I most assuredly did have to go and get another rig to drill that well.

"As to what that cost me, that is an awful hard question to answer, what it cost, but it cost a plenty. It cost in the neighborhood of $20,000 to drill the hole. We had a contract to drill it; we had to pay $1 a foot more than we would have paid any one else. We drilled it 1,665 feet."

Adopting the most favorable construction of this testimony in favor of defendants in error, as the rule requires, we think it may be reasonably implied therefrom that Mr. Brooks, shown to be the alter ego of the supply company, was informed of the purpose for which defendants in error desired the rig and of the necessity of a prompt delivery. If Martin had an oil lease about to run out, as he testified, it was within the easy contemplation of Brooks that upon a failure to deliver the rig Martin would seek to secure another in order to avoid a forfeiture of his lease, and it was the extra cost necessitated in procuring another rig which evidently constituted the basis of the jury's verdict for special damages.

[2] Plaintiff in error insists that the conversation over the phone was after the arrival of the drilling rig at Iowa Park, and the evidence as a whole seems to support this contention, but we do not regard that fact as material. Generally speaking, special damages for the breach of a contract are not recoverable unless notice thereof was given the wrongdoer at the time of the making of the contract. See M., K. & T. Ry. Co. v.

Belcher, 89 Tex. 428, 35 S. W. 6. The principle of the Belcher Case, and of those in line with it, is that a party undertaking the delivery is held to assume, when he makes his contract, a liability only for those damages which would, in the usual and ordinary course of things, result from a failure to perform, because it is only these he is required to foresee; but in the later case of Bourland v. Choctaw, O. & G. Ry. Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647, the principle was held to apply where notice of the probable consequences of a breach of the contract was given at a time when, by a fulfillment of the contract and an exercise of due care on the part of the party breaching it, the probable consequence made the foundation of special damages might have been forseen and avoided. The Bourland Case was one where the shipper contracted for the transportation and delivery of two carloads of cotton seed. At the time of the contract for the transportation, no notice was given to the defendant company of the purpose for which the cake was needed and of the damage to result from delay in delivering it at the point of destination, where the cotton seed in fact arrived in due time. On arrival of the cake at the point of destination, however, the agent of the railway company wrongfully refused to deliver it after he had been informed by the shipper that the cake was necessary for the feeding of cattle then owned and being fed by the shipper, and it was held that the notice given at the point of destination and after the making of the original contract for transportation and delivery was sufficient to authorize a recovery on the part of the shipper of special damages to his cattle resulting because of a want of the cotton seed cake.

It was not essential, therefore, in order for the plaintiff below to recover special damages that notice of the probable consequences of a refusal to deliver the rig at Iowa Park as contracted for should have been given at the identical time of the making of the contract for the delivery. It was sufficient if notice of the probable consequences of the refusal to deliver was given at a time when the supply company could have rightfully delivered, and when by a delivery the special damages might have been avoided.

[3] It is unquestionably true in the case before us that the evidence amply supports the finding that must be imputed to the verdict and judgment below that the supply company wrongfully breached its contract to deliver the drilling rig, and we think the evidence quoted is sufficient to support the conclusion that the supply company at the time of its wrongful refusal to deliver had sufficient notice of the probable consequences of its refusal. This was the substance of

the issue on the subject as presented in the plaintiffs' petition and as presented in the special issue complained of, and it is uniformly held that it is only necessary to prove the substance of the issue, so that, as already indicated, even if the evidence should be deemed insufficient to show notice of the special damages shown in this at the very time that the supply company made its contract to deliver, it is immaterial, for such notice was sufficiently given in time, under the principle declared in the Bourland Case. Plaintiffs in error's assignments of error relating to this subject are accordingly overruled.

[4, 5] Plaintiffs in error's next assignment of error is as follows:

"Because the court erred in rendering judgment for the plaintiffs against the defendant for $1,800, for the reason that the judgment as to the $1,800 is excessive and is contrary to the law and unsupported by the pleadings and the testimony in the case."

It seems evident that this assignment is too general for consideration, but if by any possibility we could be mistaken in this conclusion, the assignment nevertheless should be overruled, for the testimony seems to make it evident that $1,800 special damages found by the jury and awarded by the judgment of the court, is founded upon H. A. Martin's statement as a witness that they had to pay $1 a foot more than they would have had to pay for the 1,665 feet drilled, the difference between $1,665 and $1,800 allowed probably being the interest recoverable under the plaintiffs' prayer for recovery.

No other question is presented by the assignments of error, which are all overruled, and the judgment affirmed.