## KNOX v. FARMERS' STATE BANK OF MERKEL. (No. 446.)

. Court of Civil Appeals of Texas. Eastland.
May 18, 1928.

Rehearing Denied June 22, 1928.

1. **Pleading ⊂⇒34(7)—All reasonable intendments are indulged in favor of pleading, in reviewing ruling on general demurrer.**

In testing the correctness of the ruling of the trial court in sustaining general demurrer to a pleading, all reasonable inferences and intendments arising from the allegations of the pleading must be indulged in favor of its sufficiency.

2. **Mortgages ⊂⇒312(4)—Petition, alleging plaintiff was entitled to release of trust deed according to terms thereof on making payment, sufficiently charged defendant's contractual duty to execute release.**

In action for damages resulting from defendant's failure and refusal to release deed of trust after payment, resulting in plaintiff's failure to sell oil and gas lease on property, petition, which alleged that at the time of the payment of the note plaintiff was legally entitled to release of the deed of trust according to the terms thereof, sufficiently charged contractual duty of defendant.

3. **Mortgages ⊂⇒309(1)—Holder of trust deed must release lien on payment of indebtedness secured.**

Legal duty rests upon holder of trust deed to release the lien on payment of the debt which the trust deed secures, aside from any duty imposed by express agreement to that effect in the deed of trust.

4. **Mortgages ⊂⇒312(4)—Refusal of bank holding trust deed to execute release on payment of debt rendered bank liable for damages resulting from grantor's failure to sell lease, where bank knew negotiations for sale were pending.**

Failure of bank holding trust deed to execute release on payment of the indebtedness secured until grantor paid another debt he owed the bank, rendered bank liable for damages resulting from grantor's failure to sell lease due to condition of title, where bank knew that negotiations for sale of lease were pending and that grantor desired to have title clear.

5. **Mortgages ⊂⇒312(1)—Damages are recoverable from mortgagee for wrongful refusal to release mortgage.**

Damages properly pleaded and proved are recoverable against mortgagee for wrongful refusal to release mortgage after payment of debt.

6. **Mortgages ⊂⇒312(1)—Where grantee of trust deed absolutely refused to execute release until grantor should pay additional indebtedness, failure of grantor to tender expense of release did not prevent recovery of damages.**

Failure of grantor of deed of trust to tender to grantee expense of procuring execution of release *held* not to prevent recovery of damages for grantee's refusal to release trust deed, where refusal was not based on failure to tender the expense of the release, but was refused absolutely until grantor should pay off additional indebtedness.

7. **Mortgages ⊂⇒312(4)—Recovery of damages for grantee's wrongful refusal to execute release of trust deed was not avoided by fact that damages were not foreseen on executing trust deed.**

Inability of parties to foresee, on execution of trust deed, that grantor would have opportunity to lease premises for gas and oil or that failure of grantee to release the trust deed would prevent the consummation of such deal, did not preclude grantor's recovery of damages for grantee's failure to execute release on payment of the amount secured, where the grantee was then put upon notice and made fully acquainted with the nature of the transaction and damages resulted from failure to clear title.

Appeal from District Court, Taylor County; M. S. Long, Judge.

Suit by J. B. Knox against the Farmers' State Bank of Merkel. From a judgment of dismissal, plaintiff appeals. Reversed and remanded.

Lee R. York, of Abilene, for appellant.

Scarborough & Wilson, of Abilene, for appellee.

LESLIE, J. J. B. Knox, appellant, plaintiff below, sued the Farmers' State Bank of Merkel, defendant below, for the sum of $1,-500 damages alleged to have been occasioned him by the failure and refusal of said bank to release a deed of trust on his lands, thus enabling him to sell an oil and gas lease on the property for that amount. The plaintiff alleged the indebtedness secured by the deed of trust had been fully paid, and that he informed the defendant that a lease upon the land could be sold for such sum, provided the defendant would release the apparent lien upon the plaintiff's land. The trial court sustained a general demurrer to the plaintiff's petition. The plaintiff elected to stand upon the allegations of his pleading, and the cause was dismissed; hence this appeal.

[1] In testing the correctness of the ruling of the trial court in sustaining the general demurrer to the pleading, all reasonable inferences and intendments arising from the allegations of such pleading must be indulged in favor of its sufficiency. Chipley v. Smith (Tex. Com. App.) 292 S. W. 209; Stephenson et al. v. Gaines (Tex. Com. App.) 298 S. W. 407. In other words, the pertinent and material allegations of the plaintiff's petition become, in the instant case, the statement of facts, in so far as this court is concerned.

In the application of the above rule to the pleadings before us, it may be well to set out the petition in full, omitting formal parts :

---

"(1) That on or about the 6th day of December, 1921, the plaintiff herein made, executed, and delivered to the said defendant his certain deed of trust, wherein and whereby he granted to the said defendant a lien on certain real estate situated, lying, and being in Callahan county, Tex., and being a part of the G. W. Anderson survey No. 777, and being fully set out and described in the said deed of trust, which deed of trust is recorded in volume 15, p. 418, of the Deed of Trust. Records of Callahan County, Tex., to which deed of trust and the records reference is here made for a full description of the property therein conveyed; which deed of trust was given for the better securing one note in the sum $3,000, dated December 5, 1921, and signed by the said J. B. Knox and payable to the order of the Farmers' State Bank of Merkel, Tex., payable at Merkel, Tex., 6 months from date thereof, with interest thereon from date until paid at the rate of 10 per cent. per annum from date until paid.

"(2) That some time in the spring of 1922, the exact date plaintiff is not sure of, the said $3,000 note secured by the said deed of trust was fully paid off, both principal and interest, and wholly canceled and discharged. That, at the time of the payment of the said note, the plaintiff herein was legally entitled to a release of the said deed of trust according to the terms thereof, and at that time or a short time thereafter plaintiff sent to the said defendant a release already prepared for the signature of the said defendant, and requested and demanded that said defendant execute the said release, thereby removing the cloud of the said deed of trust from the said property, but that the said bank, defendant herein, willfully and unlawfully and without cause, refused and neglected to sign the said release, but, on the other hand, left the said deed of trust standing as an apparent valid lien against the said property, to the plaintiff's great damage as does hereinafter more fully appear.

"(3) That on or about the 28th day of August, 1925, the plaintiff agreed and contracted to lease the said real estate or a part thereof for $1,500 cash and $2,500 to be paid out of one-eighth of the first oil produced on the said land, and the said sum of $1,500 was placed in the bank at Cross Plains, Tex., to be held pending the furnishing of an abstract showing a clear and unincumbered title to the said land and real estate. That the plaintiff had prepared an abstract up to date and delivered to the said lessees, and that the said deed of trust showed in the said abstract to have been unpaid and unreleased, and the said parties who contracted to lease the said premises' raised an objection thereon on account of the said unreleased deed of trust, and this plaintiff went to Cross Plains, and a well then being drilled right near this property was just ready to be given a final test, and this plaintiff saw that, unless the said deal was closed immediately, that same would very likely be lost and, in the event that the well should come in a dry hole. This plaintiff went to the parties who had contracted to lease the said premises, and they agreed that, if the defendant, the Farmers' Bank of Merkel, would wire them that the said $3,000 note was paid off and that they would release the said deed of trust, he would close the deal immediately and turn the said $1,500 over to this plaintiff. That the plaintiff thereupon called up Mr. Anderson, the president of the said bank, and requested him to wire the said parties that the said note was paid, and that he would release the said deed of trust, but that the said defendant absolutely refused to release the said deed of trust or any part thereof unless and until the plaintiff paid off to the said bank a small indebtedness of $133 which he owed there, but which was no part of the said secured indebtedness, and had nothing to do therewith. That plaintiff thereupon got in his car and went to Merkel and made an arrangement whereby he secured a release to the said deed of trust and took the said release to the county seat of Callahan county, and had the same recorded and brought into the said abstract and returned with it to the said Cross Plains, but that in the meantime the said well had come in dry, and the said proposed lessees turned the whole proposition down and refused to accept the said title and withdrew their money, and this plaintiff was thus damaged directly in the sum of $1,500 by reason of the said wrongful and illegal act of the defendant in refusing to release the said deed of trust. That, had the defendant released the said deed of trust or even wired the said parties that the said $3,000 note was paid off and discharged and that they would release the said deed of trust, this plaintiff would have received the sum of $1,500 in cash, but by reason of the said wrongful act this defendant was deprived of the said money and lost the same and is damaged to that amount. That, when this plaintiff was talking to the said defendant or its agent over the telephone, he told him that the money was in the bank, and that, if he would just give the word, he would receive the money, and that otherwise he might lose it, and urged the defendant to wire the said parties that the said note was paid. That he willfully, maliciously, illegally, and without justification or excuse refused, failed, and neglected to either wire the said parties or release the said deed of trust, and his said illegal act directly resulted in the loss of the said $1,500 to this plaintiff, and he was damaged in that amount as a direct consequence thereof.

"Wherefore plaintiff prays the court that defendant be cited to appear herein and answer this petition, and for judgment against the defendant for the sum of $1,500, cost of suit, and such other and further relief, special and general, in law or in equity, that he may be entitled to.　　　　　　Lee R. York,
"Attorney for Plaintiff."

By four propositions, the appellant contends the court erred in sustaining the general demurrer to his petition. The first three are to the effect that a cause of action was fully set forth, based upon a legal duty on the part of the appellee bank to release the mortgage and give the appellant an acquittance thereof upon his payment of the indebtedness secured thereby; and, by the fourth proposition, the contention is made that the petition sets forth a cause of action in which a contractual duty rested upon the appellee, upon the payment of the indebtedness secured, to execute and deliver to appellant a release of the deed of trust in question.

[2] As to the appellee's duty to release the

deed of trust upon the theory that it contracted so to do, we have no doubt. The deed of trust is not attached to the petition, but in the petition it is alleged:

"That at the time of the payment of said note the plaintiff herein was legally entitled to a release of the said deed of trust *according to the terms thereof*."

This language is plain, and could have no other meaning except that, upon the payment of the mortgage debt, the bank, under the terms of that instrument, was in duty bound to release the lien alleged. But, if it be conceded that the language is not susceptible of so clear an understanding, there can be no doubt that by all reasonable and fair intendments no other conclusion is deducible except that the bank, under the terms of the mortgage, agreed to release it upon the payment of the debt. This alone calls for a reversal of the case, and requires that it be heard upon its merits, if any.

[3] However, in view of another trial, it is our conclusion that, upon the record presented and the points urged, aside from any duty resting on the bank to release the lien by reason of any express agreement to that effect, a legal duty rested upon the bank to release the lien upon the payment of the debt. The proposition that such a duty arises upon the facts presented is supported by the opinion of our Supreme Court in Mickie v. McGehee, 27 Tex. 134, wherein it is said:

"It is true that a mortgagor, on the payment of the debt, is entitled to the release of the mortgage; but if he be driven to his action to compel the execution of a release, or to obtain a decree cancelling the mortgage deed, he is not entitled to recover punitory damages from the other party, unless, indeed, a case of very special circumstances were shown, which might form an exception to the general rule."

In that opinion it is stated that the case was not one in its nature for exemplary damages, and, for the reason that an erroneous charge in respect thereto was given by the court at the plaintiff's request, the judgment was reversed and the cause remanded. Of course, as stated in 17 C. J. p. 974, and uniformly held by the courts of this state, it is a general rule that, in order to recover exemplary damages, there must be actual damages shown, although the elements otherwise authorizing the assessment of exemplary damages may exist. This being the rule, the court of necessity reversed the judgment in said case, since, as stated in the opinion, "the plaintiff below * * * is not shown to have been in any way damaged by the refusal of the defendant to execute a release of the mortgage."

There is but one inference to be had from a study of this opinion, and that is that, if the plaintiff had, in fact, shown himself in any way damaged by the refusal of the defendant to execute the release of the mortgage, such damages would have been recoverable under proper allegations and proof, and we understand the opinion to so hold.

That the mortgagee, upon the payment of the mortgage debt, rests under the legal duty or obligation to execute a release of the lien securing the same, is supported by the reasoning in the opinion by Chief Justice Jones in the case of Witherspoon v. Green (Tex. Civ. App.) 274 S. W. 170. That is a case in which Witherspoon, a landowner, leased for oil and gas development a tract of land which, by assignment, had come into the ownership of Green. The terms of the lease required a down payment of $300, and, if no drilling operations were begun by a certain time, $300 additional was to be paid to cover the privilege of deferring the commencement of a well for an additional period of time. After the lapse of such additional period of time, no drilling operations having been begun, and no payment made for the privilege of deferring the commencement of the same, the lease, according to its terms, "lapsed and became null and void." However, it was not released by Green, and it appears to have thereafter become an obstacle in the way of Witherspoon's again leasing the property for a valuable consideration. Green refused to execute a release of the original instrument and thus clear the record of an apparent cloud on Witherspoon's title. Upon a promise by Witherspoon to pay Green $500 for the execution and delivery to him of a release of said expired lease, Green executed such release, and, in a suit thereafter to recover the $500 promised by Witherspoon under the circumstances, the court, in discussing Green's duties in the premises, used this language:

"This cloud upon appellant's title had been cast by virtue of the act of appellee in his failure to perform the terms upon which the lease was conveyed to him. If he had performed the terms of the lease and kept same alive by the payment of the annual rental, or by the beginning of a well, the records of Navarro county would have truthfully reflected the title to this land. The law charged appellee with the duty of removing this cloud from appellant's title by the execution of a release of his apparent, though not actual, interest in the land. This duty he performed by the execution of the release in question. In executing this instrument appellee was only performing an obligation which the law imposed upon him. The doing of what he was bound by law to do could not furnish a consideration for the promise exacted from appellant to pay him $500 therefor. The discharge of this legal duty, being the only consideration that passed to appellant for the execution of the release, we do not think is sufficient in law to render this promise enforceable."

In the instant case we think it may well be said that the law charged the appellee bank

with the duty of removing the cloud from appellant's title by the execution of a release of its apparent, though not actual interest in his land. If it had executed such release, it would have been only performing an obligation which the law imposed upon it.

[4] As bearing upon the appellee's legal duty under the circumstances, special attention is directed to the fact that, when the appellant notified the appellee that he was in a position to lease the land for $1,500 (but for the fact that the original deed of trust appeared upon the record and in the abstract as unreleased), the appellee bank refused the execution of such release unless the appellant would pay another debt of $133 he owed the bank, but which amount was no part of the original indebtedness or in any way secured by the deed of trust sought to be released. It was a wrongful act upon the part of the bank to refuse the release upon this consideration or for this reason. By its failure and refusal to clear the record of this apparent cloud upon the appellant's title, such conduct prevented his selling a lease thereon for the sum of $1,500, the amount sued for. From the facts pleaded, the appellant was made fully aware of the consequences to follow in the event of its refusal to execute the release. Therefore, upon the facts admitted, by reason of the court's having sustained the general demurrer, it occurs to us that the amount sued for is recoverable as special damages for injuries wrought by the alleged conduct upon the part of the appellee toward the appellant. The effect of the appellee's alleged refusal to execute the release in question was to make an unwarranted claim that said mortgage was a valid and subsisting claim against the land, and this wrongful act defeated the appellee's sale of a lease on his land for the sum claimed, with the resulting liability on the part of the appellee for the damages occasioned. Humble Oil & Rfg. Co. v. Kishi (Tex. Com. App.) 291 S. W. 538, Id. (Com. App.) 276 S. W. 190, and Id. (Civ. App.) 261 S. W. 228.

The appellee insists that the trial court correctly sustained the demurrer, first (a) because no statutory remedy exists in Texas authorizing recovery under a state of facts like those set forth in the petition, and (b) that such an action cannot be maintained at common law; and, second, that the petition contained no allegation that the appellant, upon demanding the release, tendered the necessary expenses of procuring the execution of the same.

It is true Texas has no statutory remedy providing for recovery upon the state of facts alleged, but we are of the opinion that the law in this state relative to such litigation or such state of facts is clearly indicated by the opinion of our Supreme Court in Mickie v. McGehee, supra. We have not been cited to any authority definitely laying down the ap-

plicability or inapplicability of the common law to a state of facts similar to those under consideration in the instant case, but we are of the opinion that there has long existed in this state a remedy for the wrong complained of. In Morrill v. Title Guaranty & Surety Co., 94 Wash. 258, 163 P. 733, the Supreme Court of Washington, in passing upon a case involving the failure to discharge a mortgage that had been paid off, and in discussing a statute pertaining to such litigation, said:

"And, while it might be said technically that there was no cause of action and no damages recoverable at common law for the failure to satisfy a mortgage, there was such action in equity; or, to state it in another way, there was and is an action independent of all statutes. Section 8799 does not give a right of action. It assumes that a right of action existed at the time. The statute is no more and no less than a substitution of a penalty in the way of damages for the general relief allowed in equity, with interest and costs."

In another opinion by the same court, in construing said statute, this language is used (94 Wash. 263, 162 P. 362):

"It provides a certain recovery in all cases in lieu of the uncertainties of the common-law action."

[5] It is unnecessary to trace the origin of the remedy invoked by the appellant in this case or to determine whether it rests in common law or in equity. That it exists we have no doubt, and under our blended system of law and equity we think such damages properly pleaded and proved are recoverable.

[6] The appellee's further contention, that the plaintiff's petition is fatally defective, in that it contained no allegations that the expense of procuring the execution of the release was tendered by him, is overruled. The petition alleges:

"That said defendant absolutely refused to release said deed of trust or any part thereof unless and until the plaintiff paid off to said bank a small indebtedness of $133 which he owed them, but which was not part of the said secured indebtedness, and had nothing to do therewith."

This relieved the appellant of the necessity, if any existed, of paying or tendering the payment of the necessary expenses of the release. In Buonocore v. De Feo, 76 Conn. 705, 56 A. 510, the Supreme Court of Connecticut, under a similar state of facts, and in disposing of the particular point now under consideration, said:

"Our decisions leave little doubt upon this question. When Ross made the offer, the defendant flatly refused to execute the release unless he should be paid the sum of $5, which he claimed that the plaintiff owed him in another transaction. Here was as plain and positive a declaration, on the part of the defendant,

as could well be made, that he would not receive the amount of the expense attending the release deed if the same should be actually produced and tendered. As such a declaration, it relieved the plaintiff from the necessity of such production and formal tender. By the defendant's acts, therefore, the plaintiff is in the same legal position he would have been in, had a tender in strict form been in fact made."

[7] The further contention is made by the appellee that there is no allegation in the petition that in 1922 the appellee could foresee that in 1925 the appellant would be offered $1,500 for an oil and gas lease on said premises, and that the existence of such apparent lien, or the appellee's failure to release the same, would prevent the consummation of the deal alleged. Under the circumstances alleged, we do not believe that it is necessary, as a predicate for recovery by appellant, that the appellee, at the date of the execution of the deed of trust, or in 1922, could have foreseen, or that it should have then been put upon notice, that the damages claimed might accrue upon the contingency alleged. At the time the appellant was endeavoring to market his lease, it appears that the appellee was then put upon notice and made fully acquainted with the nature of appellant's deal. At this time the appellee was informed of the prospective loss to appellant in the event the release was not executed. Under these circumstances the appellee neglected and refused to discharge the lien, and the reason assigned for failing and refusing to do so is not a valid one. This notice, given subsequent to the date of the execution of the mortgage, or the payment of the note, but before the damages resulted, and at a time when the injury might have been prevented, is a sufficient predicate for the liability asserted. The appellant's loss did not arise from any cause, for the prevention of which notice at the date of the contract or at the date of the payment of the note was important, but from a failure on the part of the appellee to clear the appellant's title of a cloud at a time when the probable consequences thereof were fully disclosed. Bourland v. C. O. & G. Ry. Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647; Western Union Telegraph Co. v. Hice (Tex. Com. App.) 288 S. W. 175.

It follows that the appellant's assignments are sustained. What is here said is based upon the assumption that the plaintiff's petition sets forth the facts involved. A trial on the merits may present quite a different record. About that we are not concerned and express no opinion; but, for the reasons assigned, we believe the court should have heard this case upon its merits, and, for the error in failing to do so, the judgment of the trial court is reversed, and the cause remanded.