McCOLLUM EXPLORATION CO. et al. v. REAUGH et al.

No. 10748.

Court of Civil Appeals of Texas. San Antonio.

Sept. 25, 1940.

Rehearing Denied Jan. 15, 1941.

Strickland, Ewers & Wilkins and R. D. Cox, Jr., all of Mission, and Baker, Botts, Andrews & Wharton and Gaius G. Gannon, all of Houston, for appellants.

B. D. Kimbrough, of McAllen, for appellees.

MURRAY, Justice.

This suit was instituted in the 92d District Court of Hidalgo County, Texas, by G. O. Reaugh, W. T. Reaugh, Isabelle R. Lambert, joined by her husband, G. I. Lambert, and Edith R. Cowgill, joined by her husband, I. M. Cowgill, as plaintiffs against McCollum Exploration Company, a private corporation, R. E. Harding, W. A. Harding and M. P. Lackland, seeking to remove cloud from title to two tracts of land situated in Hidalgo County; one containing 42.33 and the other 5.04 acres of land. Plaintiffs also sought to recover special damages in the sum of $10,582.50 and exemplary damages in the sum of $10,-000.

The cause was submitted to a jury and upon their answers to special issues judgment was rendered in favor of all the plaintiffs and against all of the defendants except M. P. Lackland, removing the cloud from the title and allowing actual damages in the sum of $10,582.50 and exemplary damages in the sum of $5,000, from which judgment the defendants have appealed.

The first question raised relates to the measure of damages applied in determining the amount of actual damages sustained by appellees as a result of the cloud cast upon their title to the 42.33-acre tract by appellants. Appellees were offered a cash consideration of $250 per acre, together with other valuable considerations, for an oil and gas lease upon the 42.33-acre tract, which they were unable to accept due to the fact that appellants had recorded a purported oil and gas lease on this tract signed by G. O. Reaugh and W. T. Reaugh and which appellants refused to

release. Appellees recovered the full amount of this offer without deducting anything for the present value of such a lease.

This controversy arose in the following manner: Prior to any of the happenings herein involved, G. O. Reaugh and his wife were owners of the two tracts of land above referred to. Mrs. Reaugh died and her one-half interest was inherited by her three children, W. T. Reaugh, Isabelle R. Lambert and Edith R. Cowgill. McCollum Exploration Company desired to secure a number of oil and gas leases in the vicinity of the Reaugh property. It employed R. E. Harding to secure these leases for it, with the understanding that the leases were to be taken in the name of R. E. Harding and by him assigned to McCollum Exploration Company, or to any one else that the company might designate. It was further understood that W. A. Harding was to do the actual work of assembling the block of leases. M. P. Lackland was a notary public in Hidalgo County and supposedly took the acknowledgments of G. O. Reaugh and W. T. Reaugh to the oil and gas lease herein challenged as being invalid.

W. A. Harding undertook to secure a lease upon the Reaugh tracts of land. After some negotiations a lease was prepared in which G. O. Reaugh and his three children, together with the husbands of the daughters, were named as lessors and R. E. Harding as lessee. The carbon copy of this lease was signed by G. O. Reaugh and W. T. Reaugh in the presence of M. P. Lackland, but, according to appellees' contention, no acknowledgment was to be executed to the instrument until all named lessors had signed. The carbon copy was delivered to Harding and the ribbon copy retained by the Reaughs for the purpose of having the other lessors execute the same. The consideration for the lease was to be $5 per acre and other valuable rights. A check for the $5 per acre was delivered to the Reaughs at the time the carbon copy of the lease was delivered to Harding. The other lessors failed to execute the lease, so Lackland placed an acknowledgment on the carbon copy and it was recorded. The Reaughs demanded a release of this instrument, which was refused. They informed W. A. Harding that they had an opportunity to lease their property for a much larger consideration than Harding was paying, but that they would not be able to do so unless they could secure a release of the instrument he had placed of record. Nevertheless, Harding refused to execute any release. The amount of the damage sustained by appellees was not submitted to the jury, but apparently the trial court agreed with the contention of appellees that they had lost their opportunity to lease their land to one John Lynes for a cash consideration of $10,582.50 as a result of the failure of appellants to release the alleged invalid lease, and this was the amount of their damage, without reference to the present value of the lease. There was evidence that leases in the neighborhood of the Reaugh land were worth, at the time of the trial, from $400 to $600 per acre. Appellants complained because this phase of the matter was not submitted to the jury, so it becomes apparent that if the present value of the lease is to be taken into consideration in arriving at the amount of damage, there is error in the record.

■ The rule seems to be well established that in a suit of this nature a recovery can only be had for special damages as distinguished from general damages. Newell on Slander and Libel, § 229; 37 C. J. 134; 17 R.C.L., Title Libel and Slander, § 216; Burkett v. Griffith, 90 Cal. 532, 27 P. 527, 13 L.R.A. 707, 25 Am.St.Rep. 151.

The question to be decided is, What is the proper measure of the special damages? Appellees contend that the measure of damages is the value of their bargain which they lost, and that the value of their bargain was the price offered for the lease without reference to the value such a lease might have at the time of the trial. Appellants contend that the proper measure of appellees' special damages is the price offered for the lease by Lynes less the value of the lease at the time of the trial. The evidence strongly indicates that the lease had increased in value rather than decreased, and this being so it would seem that appellees were actually benefited rather than damaged by appellants' refusal to execute the release.

There seems to be no case directly in point in this State. We are cited by appellees to Thuss on Oil and Gas, 2d Ed., page 308, where it is stated: "A party refusing to execute a release (of a deed of trust actually discharged by payment of the debt secured) having notice that the owner of the land was endeavoring to market his lease, is made fully aware of the consequences to follow a refusal to

release the lien. When it appeared the lease could have been executed in consideration of $1,500 such amount is reasonable as special damages for the injuries resulting from the unwarranted refusal to release the lien. Knox v. Farmers', etc., Bank [Tex.Civ.App.] 7 S.W.2d 918 (Writ Refused)."

This statement is shown to be based upon Knox v. Farmers', etc., Bank, Tex. Civ.App., 7 S.W.2d 918. A careful consideration of this case discloses that it was a case in which a general demurrer had been sustained to plaintiff's petition. The petition is set out in full in the opinion, and when all inferences and intendments are given to the allegations of the petition it is alleged, in effect, that the lease there described had become worthless at the time of the trial. The question as to the proper measure of damages was not raised and the court was not called upon to pass upon this matter.

We are also cited to the case of Humble Oil & Refining Co. v. McLean, Tex.Civ. App., 268 S.W. 179, 187, where it is stated: "Appellee's measure of damages was the loss of his bargain, and his bargain was $750 per acre and an overriding royalty of 3/28."

This isolated statement when taken alone would seem to bear out appellees' contention, but when the entire case is considered we find that in that case the lease at the time of the trial was worthless. This being true naturally the $750 per acre and the overriding royalty of three twenty-eighths would measure the damages sustained. We quote from page 182 of 268 S.W. as follows: "The wells that were being drilled on the 5th day of June, 1920, soon showed that appellee's lease was, in fact, entirely without value as oil-producing property, and it, together with all the surrounding land, was abandoned and not further developed."

█ It occurs to us that whether special damages or general damages are to be determined, the proper method is such a measure as would compensate for the loss or prejudice suffered. In 13 Tex.Jur. p. 75, under title of damages, it is stated: "One who has suffered injury or damage is held to be entitled to recover as nearly as possible compensation for the loss or prejudice which he has suffered. The purpose of the law in awarding actual damages, is to remove the wrong that has

been done, or to compensate for the injury inflicted, but not to impose a penalty; and the cardinal principle, and only inflexible rule in this respect is that the person injured shall receive a compensation which is commensurate with his loss or injury and no more. Any method of calculation which will afford to the injured party more than just and reasonable compensation cannot be considered the correct measure of recovery."

Not finding any case directly in point we reason by analogy from similar cases. In 13 C.J.S., Carriers, § 229, 458, it is said: "Where * * * goods are contracted to be sold at a fixed price and to be delivered at a particular place, and the carrier undertakes the transportation thereof, with full notice that the goods are to be sold and forwarded seasonably, the consignor will be entitled to recover the difference between the contract price and the value of the goods when actually delivered, if by reason of unreasonable delay in transportation he loses the sale; under these circumstances, the undertaking is special and the loss and liability are special."

In Gulf, C. & S. F. Ry. Co. v. Coulter, Tex.Civ.App., 139 S.W. 16, 20, it is said: "Assuming that Coulter had a contract with Eby for the sale of the goods, that he had given sufficient notice to the plaintiff in error's agents at Ft. Worth at the time of the shipment to charge the plaintiff in error with liability for such special damages as might result from the loss of his contract with Eby, and assuming, further, that the goods arrived at their destination in a damaged condition due to the fault of the carrier, and that by reason of that fact the sale to Eby was lost, the measure of the defendant in error's damages would be the injury he sustained by reason of the loss of that contract of sale. In other words, his damages would be the difference between the value of his goods in their damaged condition at the time they reached Philadelphia and the value of his contract with Eby. Deming v. Railway Co., 48 N.H. 455; 2 Am.Rep. 267; St. Louis, I. M. Ry. Co. v. Mudford, 48 Ark. 502, 3 S.W. 814; 3 Hutch. on Carriers, § 1367."

█ Applying the same general principles as above stated, the proper measure of damages in the case at bar would be the price offered by Lynes less the value of a a lease on the tract at the time of the trial. The fact that the cloud had not been re-

moved from appellees' land at the time of the trial would be one of the elements to be taken into consideration in determining the present value of the lease. We sustain appellants' first, second and third propositions.

■ Counsel for appellees, in his opening argument, stated to the jury in effect that inasmuch as the McCollum Exploration Company was a corporation with capital stock valued at $500,000, it should be required to pay more exemplary damages than a person without wealth. Such an argument has been held to be improper argument and such error as would require a reversal of a case. Willis & Bros. v. McNeill, 57 Tex. 465; Texas Public Utilities Corporation v. Edwards, Tex.Civ.App., 99 S.W.2d 420.

Counsel for appellees contends that such argument was based on facts in the record and made in anticipation of an argument which he conceived was going to be made by counsel for appellants. The argument cannot be condoned for these reasons.

■ We will not attempt to discuss each proposition because many of the questions raised will not arise, in all probability, upon another trial. However, there is one other matter we wish to discuss, which relates to the permitting of Mesdames Cowgill and Lambert to recover for the casting of a cloud or the slandering of the undivided two-sixths interest in the 42.33-acre tract owned by them. The alleged invalid lease contained the names of Mesdames Cowgill and Lambert, as lessors, but also disclosed that they had not signed or acknowledged the same. Appellants did not assert any claim whatever to the two-sixths undivided interest in the tract owned by Mesdames Cowgill and Lambert. It is true that Lynes would not lease the tract unless he could secure a lease on all interest, but this fact in itself is not sufficient to justify a recovery on the part of Mesdames Cowgill and Lambert for clouding the title to their two-sixths interest in the land, when in truth and in fact the title to their interest had not been clouded.

The judgment is reversed and the cause remanded for another trial.

NORVELL, Justice.

I concur in the order reversing this cause. The "value of the bargain" is not to be measured alone by the price offered by John Lynes to appellees for an oil and gas lease upon the property. The effect of a favorable judgment upon the cause of action pleaded by appellees would be to clear the seven-eighths mineral interest (and this is what Lynes offered to buy) of the claims of appellants. If this seven-eighths mineral interest has any value at the time of the trial, it must be taken into consideration in arriving at the amount of damages. This interest was not shown to be worthless upon the trial and the presumption is that it has some value. I do not agree with the majority holding that in arriving at the value of a seven-eighths mineral interest, the fact that it is burdened by an outstanding "spurious" lease should be considered. As above pointed out, the effect of a judgment, in the event appellees are successful, will be to remove the cloud cast on the title by said lease. We should not anticipate that another appeal will be taken from a judgment which might be rendered in the future. It may be that in the event of such an occurrence appellants would have a further complaint, if such appeal resulted in damage to them because of its effect in continuing the cloud upon appellants' title. The question of the availability of such a remedy upon a set of hypothetical facts which may never have an actual existence is obviously not before us in this case.

I am further of the opinion that evidence of the value of oil and gas leasehold estates upon lands in the vicinity of the property here involved is admissible upon the issue of value, provided of course such evidence is pertinent under the recognized rules of evidence.

SMITH, Chief Justice.

I concur in reversal. I think the true measure of appellees' damages is the difference, if any, between the amount of the alleged bargain offered them and the market value, at the time of the trial, of an oil and gas lease on the land while burdened with the outstanding spurious lease. As I understand the record, however, there was not sufficient evidence to support a finding of the present lease value of the land so burdened, or that it had no value in its present status. The true measure of damages, therefore, was not established.

Incidentally, I do not think testimony of the lease value of lands in the same vicinity was admissible as tending to establish the measure of damages unless such nearby lands were shown to be burdened with an existing lease such as that which clouded appellees' title.