Barron KIDD et al., Appellants,

v.

Pierce A. HOGGETT et ux., Appellees.

No. 13533.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 23, 1959.

Rehearing Denied Jan. 27, 1960.

B. K. Neel, Menard, Runge, Marschall & Runge, San Angelo, for appellants.

Coke R. Stevenson, Junction, Pierce Stevenson, Austin, for appellees.

POPE Justice.

Pierce A. Hoggett and wife sued Barron Kidd, A. W. Cherry, and others, to remove the cloud of an unreleased but expired oil and gas lease, and for damages. There was no jury. Upon trial defendants disclaimed with respect to the oil and gas lease. The court rendered judgment removing the

cloud but also awarded damages against defendants Kidd and Cherry in the amount of $8,400. Only Kidd and Cherry have appealed from the judgment. Kidd and Cherry urge that the judgment for damages was erroneous because (1) they were under no duty to release the oil and gas lease because it was still in force and effect when demand was made upon them, (2) this is an action for slander of title and the plaintiffs, prior to the motion for judgment, failed to prove malice, which is an essential element of such actions, (3) an implied finding of malice is against the great weight and preponderance of the evidence, and (4) the action for damages is barred by the two-year statute of limitations. We affirm the judgment.

On April 24, 1944, the then owners executed an oil and gas lease to 2,871 acres of land. Plaintiffs are the present owners of 2,831 acres of the land, and Howell Wright owns the other 40 acres. On January 25 and 26, 1954, by assignments, A. W. Cherry and Barron Kidd became the owners of the oil and gas lease. This was a short time before the primary term of the lease expired, so they commenced a well on the 40-acre Wright tract. Cherry and Kidd took the position that the well was a producing well but there was no market for the gas from February 23, 1954, the completion date. The lease contained a shut-in gas clause which provided:

"* * * where gas from a well producing gas only is not sold or used, Lessee may pay as royalty $50.00 per well per year, and upon such payment it will be considered that gas is being produced within the meaning of Paragraph 2 hereof; * * *."

The well was shut in and lessees paid shut-in royalty for the year commencing in April, 1954, and again for the year commencing in April, 1955.

Plaintiffs became suspicious about the well, because the gas from the well was not sold at a time when the Junction Natural Gas Company needed gas. In November, 1955, after they had accepted the shut-in royalty, plaintiffs demanded a release of the oil and gas lease, but defendants refused upon assurances that the well was a producer. On January 9, 1956, plaintiffs entered into a specific lease with Ray Albaugh by which he agreed to pay $2 an acre bonus and $1 an acre for the first year's rental. This lease was subject to plaintiffs' obtaining a release from Kidd and Cherry of the oil and gas lease of record. When plaintiffs failed to obtain the release, Albaugh refused to enter into his lease and in January, 1957, released to plaintiffs. At the time of the trial, the tract had no value for oil and gas purposes. Plaintiffs, therefore, proved actual damages of at least $8,493. Shell Oil Co. v. Howth, 138 Tex. 357, 159 S.W.2d 483.

Plaintiffs on June 27, 1958, filed suit. When the case was tried in March of 1959, defendants disclaimed, and the court correctly removed the cloud of the oil and gas lease from the title. Kidd and Cherry do not complain of that part of the judgment which removes the cloud from the title. A greater portion of the briefs is devoted to the study of the nature of this action. Plaintiffs take the position that in a suit for removal of cloud and for damages, that malice is not a necessary element, but that in any event they both pleaded and proved malice. Defendants take the position that this is a suit for slander of title, that malice is a necessary element, and that it was not proved.

A lessee is under a duty in Texas to release of record an expired oil and gas lease. If the duty is imposed by the lease, an action rests on contract. Knox v. Farmers' State Bank, Tex.Civ.App., 7 S.W.2d 918, 920. Where, as here, there is no such contractual provision, there is nevertheless a duty. Wooldridge v. Rogers, Tex.Civ.App., 268 S.W.2d 213. Speaking of a refusal to release an expired oil and gas lease, it was said in Witherspoon v. Green, Tex.Civ.App., 274 S.W. 170, 171: "The law charged appellee with the duty of removing this cloud from appellant's title

by the execution of a release of his apparent, though not actual, interest in the land." Accord, Knox v. Farmers' State Bank, supra.

■ There may be some confusion as to nature of the action for damages for breach of the duty to release an oil and gas lease. Is malice necessary in such an action as this, and if so, what kind of malice? When there is an actual trespass upon property, an ouster of and a repudiation of the title of the true owner, allegations of malice are not required. Jarrett v. Ross, Tex.Com.App., 139 Tex. 560, 164 S.W.2d 550; Humble Oil & Refining Co. v. Kishi, Tex.Com.App., 276 S.W. 190, 291 S.W. 538. Also, by way of analogy, in the case of a wrongful levy of an attachment, malice was not essential to the recovery of actual damages. Farmers & Merchants Nat. Bank of Nocona v. Williams, 133 Tex. 554, 129 S.W.2d 268, 269.

■ Malice is an essential element to the recovery of actual damages in a suit for slander of title. Jarrett v. Ross, Tex. Com.App., 139 Tex. 560, 164 S.W.2d 550; Shell Oil Co. v. Howth, 138 Tex. 357, 159 S.W.2d 483; Humble Oil & Refining Co. v. McLean, Tex.Com.App., 280 S.W. 557; Stovall v. Texas Co., Tex.Civ.App., 262 S. W. 152; Texas Co. v. Stovall, 114 Tex. 582, 278 S.W. 1115; Smith v. Taylor, 34 Tex. 589, 605. To recover damages against one who, to protect himself, buys an outstanding title there must be proof of a bad faith purchase of said title for the purpose of maliciously asserting a claim against and a repudiation of the lessor's title. Shell Oil Co. v. Howth, 138 Tex. 357, 159 S.W.2d 483. Malice is an element in a suit for damages for the wrongful filing of an abstract of judgment. Commercial Securities Co. v. Thompson, Tex.Civ.App., 239 S.W. 2d 911; First Nat. Bank of McAllen v. Moore, Tex.Civ.App., 7 S.W.2d 145, 147.

■ One who sues to remove the cloud of an unreleased oil and gas lease and goes further and seeks actual damages occasioned by the loss of a specific sale of an oil and gas lease is, in our opinion, seeking recovery for the disparagement of his title, or, as it is termed, slander of title. See, Reaugh v. McCollum Exploration Co., 139 Tex. 485, 163 S.W.2d 620; 21 Tex.Law Review 448. The one clear case on the point is Wheelock v. Batte, Tex.Civ.App., 225 S.W.2d 591. In that case Mr. Justice Hughes reasons, and we agree, that a lessee should be permitted the right to assert his good faith claims to valuable properties without incurring great risk of damages just because he leaves disputed rights to the decision of courts. Hence, a plaintiff should prove malice on the part of the one refusing to give the release, and a defendant may defend against actual damages by proof of his good faith claim.

■ How malice is defined, however, is another matter. Malice as a basis for recovery of actual damages, as distinguished from punitive damages should mean that the act or refusal was deliberate conduct without reasonable cause. See, 8 Institute on Oil and Gas, 357. Malice as a basis for recovery of punitive damages should mean actual malice, that is, ill will, bad or evil motive, or such gross indifference to or reckless disregard of the rights of others as will amount to a wilful or wanton act. Winn v. Warner, Tex.Civ.App., 199 S.W. 2d 560; Wheelock v. Batte, Tex.Civ.App., 225 S.W.2d 591; 39 A.L.R.2d 859.

■■ The decision in this case is not as difficult as the law on the subject may be indefinite, since whether malice, of whatever kind, is necessary or not, it was amply alleged and proved by the plaintiffs. The recovery was only for actual and not punitive damages. Since the case was tried without a jury, we presume all fact issues supported by the evidence were found in support of the judgment. United States Fidelity & Guaranty Co. v. Carr, Tex.Civ. App., 242 S.W.2d 224. In our opinion the evidence supports plaintiffs' contentions that the well was not a producing well when completed or afterwards. The

evidence and the inferences from the evidence support a finding of malice and that finding is not against the great weight and preponderance of the evidence. This is true with respect to the evidence in the record at the time defendants made their motion for judgment at the close of plaintiffs' evidence.

The well has never actually produced anything. From February 23, 1954, the completion date, to the date of the disclaimer in 1959, defendants did no work on the well. A drilling contractor of thirty-eight years experience stated that he was at the well three days after its completion, and he thought it had enough gas to supply a farm house. Joe Parker, one of the defendants and Kidd's former employee, stated that it had enough gas to serve a house and one or two pumps. R. H. Odom, a drilling contractor, stated that he saw the well in the fall of 1954, that when opened it blew for two or three minutes and then dwindled down so that nothing could be recovered from a steady flow. He expressed the opinion it was not a commercial well. Jack Barker, a gas tester for U. J. Bremmer and Sons, stated that he tested the well just before the trial, that the well flowed on an absolute open flow, 9,185 cubic feet during a little more than twenty-three hours, but that it went down to 49.8 cubic feet on the sixth day. Thereafter there was not enough volume to record the gas. On this basis the gross income from the well would be less than twenty-five cents a day. Mr. Kidd's land man wrote Phillips Petroleum Company, during April, 1957, that the well "has not produced since it was drilled," and that the lease did not have sufficient value to get involved in a lawsuit. Two geologists testified that the well was seriously damaged from the time of its completion because it was drilled with a rotary rig and had mud in the hole. Davis A. Dunn, a geologist, testified that the well was damaged in drilling and could not produce without other extensive work which was never done.

Defendants reason that the shut-in royalty maintained the well in force. Also they reason that there were gas potentials under the lease. Shut-in royalty payments excuse production only if the well is actually capable of producing gas in paying quantities. The completion of a non-producing well in an area of known gas reserves does not excuse a well capable of actual production. Defendants' reasoning reduces itself to the contention, that if they had drilled a well properly or if they would now drill another one, because of the known gas reserves, it would be a producing well. That is not such proof of a producing well which will permit shut-in royalty in lieu of actual production. Hanks v. Magnolia Petroleum Corporation, Tex.Com.App., 24 S.W.2d 5, 6; Nystel v. Thomas, Tex.Civ. App., 42 S.W.2d 168.

Bearing further upon defendants' malice was proof that the Junction Natural Gas Company, as early as the summer of 1954, was in actual need of gas. Kidd's production superintendent, according to the evidence of W. B. Hendricks, who was the mayor of Junction during 1954, told Hendricks that the well was no good, but there were gas reserves beneath the lease which they hoped to develop. He testified that he was now the manager for the gas company and Kidd did not ever request the gas company to tie on to the well. He testified that the gas company informed Kidd's organization of a desperate need for gas, but none was available from the well. The gas company was within a half mile of the Wright well, but instead of obtaining gas from that well, the gas company went out and drilled two other wells at a different place. Mr. Hendricks testified that he went out to the Wright well with a gas tester, that the tests showed that the well was like it was in 1954, that it would furnish about enough gas for a house. This was evidence that there was a ready market for gas, but that defendants had nothing to sell from the Wright well. On March 6, 1956, plaintiffs' attorney asked for a release but Mr.

Kidd assured plaintiffs he was then trying to market the gas from the well.

While Kidd and his organization were telling plaintiffs and their attorney that the well was a good producing well, that it was a commercial well, and that all that was needed was a market which would be obtained shortly, they were at that very time unable to provide gas to a purchaser who desperately needed it. Plaintiffs' attorney told Kidd and his organization that they were going to lose the lease with Albaugh unless they gave a release, but they still stood on the proposition that the well was a commercial well. This and other evidence amply supports all necessary findings, including the inference that defendants knew the well was not a commercial well, though they were leading the landowners to believe it was; that they could not furnish gas to an available market when they were representing to the landowner that they could not obtain a market. While defendants were wilfully and deliberately deceiving plaintiffs, plaintiffs suffered damages. Plaintiffs proved malice, however defined.

■ There is no merit to defendants' contention that plaintiffs' action was barred by the two-year statute of limitations, Vernon's Ann.Civ.St. art. 5526. The sale to Albaugh was lost in January, 1957. This suit was brought on June 27, 1958. In a slander of title suit, one necessary element of a plaintiff's proof is that he suffered special damages. Unless he can allege and prove that fact he has no cause of action. If frustration of a specific sale is necessary to prove a cause of action, the cause of action did not mature until the frustration occurred. Shell Oil Co. v. Howth, 138 Tex. 357, 159 S.W.2d 483. Any other rule would mean that limitation was running against a plaintiff before he had a cause of action. See 8 Institute on Oil and Gas 374.

The judgment is affirmed.