**Sam R. ELLIOTT, Appellant,**

v.

**JACKSON PETROLEUM COMPANY, Inc.,
Appellee.**

**No. 7445.**

Court of Civil Appeals of Texas.
Amarillo.

March 15, 1965.

Rehearing Denied April 5, 1965.

---

Simpson, Adkins, Fullingim & Hankins,
Amarillo, for appellant.

Clayton, Kolander, Moser & Templeton,
Amarillo, for appellee.

NORTHCUTT, Justice.

This suit was brought by Jackson
Petroleum Company, Inc. against Sam R.
Elliott to recover the unpaid price of cer-
tain cattle and for damages caused by the
failure of Elliott to accept certain cattle as
he had agreed. Elliott answered and asked
for damages caused by failure of Jackson
Petroleum Company, Inc. to deliver cattle
as contracted to do. Judgment was granted
for Jackson Petroleum Company for the
sum of $8,014.66. Elliott agrees that he
owed Jackson the sum of $8,014.66, but
is entitled to an offset to the extent of his
damages caused by Jackson's failure to de-
liver the calves as contracted. From the
judgment of the court both parties per-
fected this appeal. Hereafter the parties
will be referred to as Jackson and Elliott.

On June 7, 1963, Elliott, as purchaser,
contracted in writing with Jackson, as
seller, to purchase 1,200 head of Hereford
and Angus steers and heifer calves
branded "JP." The contract provided for
a sale price on the steers of twenty-six

cents per pound and on the heifers of twenty-four cents per pound. Approximately eight hundred head were to be delivered July 15, 1963, and the balance on October 15, 1963. The cattle were located on the Jackson ranches near Duncan, Oklahoma. Simultaneously with the execution of the contract Elliott paid to Jackson $12,000.00 as part payment being $10.00 per head.

On July 15, 1963, Elliott was at the Jackson ranches to receive the 800 head of cattle but only received 591 head. It was at that time their first disagreement was had. Elliott contended he demanded the 800 head and that there was sufficient cattle at the ranch to comply with the contract. Jackson contended the calves demanded by Elliott were too young to be delivered. Elliott at the time he received the 591 head paid for them, the payment being made by applying $5,910.00 of the original $12,000.00 and the balance by check. This left $6,090.00 of the original $12,000.00 to be applied on the balance of the cattle when delivered on October 15, 1963. On October 15, 1963, Elliott was at the Jackson ranch to receive the remaining cattle provided for under the contract. Jackson contended he had the proper number of cattle to deliver on October 15, 1963, and offered to deliver them to Elliott but that Elliott refused to take them as provided in the contract. Elliott contended the cattle offered were not the cattle he purchased and only accepted 136 head. Elliott offered to pay for the 136 head but Jackson refused to accept payment but demanded Elliott take the balance of the 1,200 head but Elliott refused. Jackson brought this suit to recover for the value of the 136 head and for his damages caused by Elliott's failure to take the remaining cattle to make up the 1,200 head. Jackson pleaded Elliott was entitled to a credit of $6,090.00 of the original $12,000.00 paid.

Elliott contended that on July 15, 1963, when he went to receive the 800 head of cattle he told Jackson he had resold the cattle to Bud Harrell and unless Jackson delivered the cattle as contracted it would get him in bad with Harrell. The contracts of resale by Elliott to Harrell were introduced in evidence and Harrell was present at the Jackson ranches on July 15 and October 15 to take the cattle and testified he had bought the calves from Elliott.

The case was submitted to a jury upon seventeen special issues. There were no objections made to the charge of the court. In answer to the special issues the jury found Jackson offered to deliver approximately 800 calves on July 15, 1963, but refused to deliver the approximate 800 calves which were to be delivered under the terms of the written contract and that the calves tendered to Elliott by Jackson on October 15, 1963, did not comply in all material respects with the contract but the calves offered were not inferior quality. The jury further found that a substantial portion of the cattle Jackson offered to deliver to Elliott on October 15, 1963, were not branded "JP" and that Jackson did not have on July 15, 1963, 209 head of calves which complied with the contract which Jackson could have delivered to Elliott. The jury also found Elliott on July 15, 1963, told Jackson he had contracted to resell the cattle involved to Bud Harrell. The jury further found the sum actually received by Jackson from the sale of the 449 head of calves sold on October 17, 1963, at Oklahoma City Auction was $44,-239.35, and were sold at the best price obtainable and at the best market obtainable and that the total contract price of the calves offered for delivery by Jackson to Elliott at the Jackson ranch on October 15, 1963, was $49,030.04.

The judgment of the court did not in any manner set out the findings of the jury and granted judgment for Jackson for the sum of $8,014.66, which was the balance due for the 136 head of calves accepted by Elliott on October 15. We consider the granting of the judgment for the sum of $8,014.66, is a finding by the court against the claims of Elliott and Jackson for damages.

Elliott presents his appeal upon three assignments of error. All of these points deal with the failure of the trial court to grant him an offset to the sum due to Jackson for the 136 head of cattle to the extent of his damages caused by the breach of the contract by Jackson. Jackson by his first nine counterpoints replying to Elliott's points of error, contends the court was correct in the matters assigned by Elliott as errors. Jackson's tenth point of error is as follows:

"The conclusive evidence and findings of the jury show no breach of contract by the appellee—only breach of the contract by the appellant."

We do not believe this is a proper assignment of error but should we be wrong in our belief in that matter, such statement is not correct. There is sufficient evidence as to a breach of the contract by Jackson and was so found by the jury. By Jackson's eleventh and last point of error it is the mere statement that the findings of the jury show Jackson was entitled to an additional sum of $4,790.69.

We are of the opinion, and so hold, that when Elliott told Jackson he had resold the cattle in question on July 15, 1963, that put Jackson on notice of any damages Elliott would have because of Jackson's failure to deliver the cattle as contracted. Elliott had resold the calves for a profit of two cents per pound and no other damages other than what he had suffered by being deprived of the cattle he had bought could be shown. Jackson had sold the calves to Elliott to be delivered on July 15 and October 15 and was notified of Elliott's obligation to deliver the same calves to Bud Harrell and all that was left for Jackson to do at that time to avert any damages to Elliott was to make delivery as he had contracted to do. Bourland v. Choctaw, O. & G. Ry. Co., 99 Tex. 407, 90 S.W. 483; Brooks Supply Co. v. Hines, Tex.Civ.App. 223 S.W. 709 (writ dismissed); Knox v. Farmers' State Bank of Merkel, Tex.Civ. App., 7 S.W.2d 918 (writ refused).

The obligation to be performed by Elliott under the contract was to receive the cattle he contracted to buy at Jackson's ranch and to pay for them. It is undisputed that Elliott went to the ranch to receive the calves on the dates the calves were to be delivered and paid for the ones he received on July 15, 1963. He received 136 calves on October 15 and offered to pay for them but payment was refused because he did not take all the calves tendered to him at that time. Jackson's obligation under the contract was to deliver the calves he sold on the dates specified. The effect of the jury's answers to the special issues is that Jackson failed and refused to deliver the calves as he had contracted to do. Consequently, if Elliott was damaged by Jackson's failure to deliver as contracted, he would be entitled to judgment for the amount he was damaged.

The trial court having failed to grant any damages to Elliott we think the judgment should be reversed as to that portion of the judgment. We are able to ascertain part of Elliott's damages under this record; but since we are unable accurately to determine from the record the amount of his damages and his right to recover damages and the breach of the contract being severable, it is necessary to reverse only that part of the judgment as to the amount of Elliott's damages. Rule 434, Texas Rules of Civil Procedure; Texas Employment Commission v. Brasuell, Tex.Civ.App., 235 S.W.2d 950 (writ dismissed); Lubbock Independent School Dist. v. Owens, Tex.Civ.App., 217 S.W.2d 186 (writ refused).

That portion of the judgment refusing Elliott any damages as an offset is reversed and remanded with instructions that the amount of Elliott's damages be determined. In all other respects the judgment is affirmed.