SHELL OIL COMPANY, INCORPORATED, V. C. W. HOWTH ET AL.

No. 7705. Decided January 14, 1942.
Rehearing overruled March 4, 1942.
(159 S. W., 2d Series, 483.)

358

*Truman Post Young, Calvin A. Brown, W. K. Koerner* and *Thompson, Mitchell, Thompson & Young,* all of St. Louis, Mo., *Orgain, Carroll & Bell,* of Beaumont, *Greenwood, Moody & Robertson,* and *Thomas B. Greenwood,* all of Austin, for plaintiff in error.

A lessee under an oil and gas lease, in order to protect his title, may take other leases from those claiming adverse interests. Klien v. Humble Oil & Ref. Co. 86 S. W. (2d) 1077; Griffin v. Stanolind Oil & Gas Co., 133 Texas 45, 125 S. W. (2d) 545; 31 Tex. Jur. 574, 904, 914, 917.

In the absence of any evidence showing malice on the part of the lessee in taking a lease from cotenant while holding one from another cotenant, and there being no evidence that the original lessor lost a sale of said land by reason of said second lease, it was error for the trial court to submit those issues to the jury. See cases cited in opinion.

*W. D. Gordon, Howth, Adams & Hart,* and *Gaston H. Wilder,* all of Beaumont, and *Cain & Wheat,* of Liberty, *Stevens & Stevens,* of Houston, for defendants in error.

Under the facts of this case it was not error to submit to the jury the issues finding, determining and establishing these

facts in the manner and form as submitted to the court and found by the jury, which constituted the predicate for the imposition as a legal consequence flowing therefrom of the damages awarded in the judgment to the plaintiff. Turner v. Miller, 42 Texas 418; Houston, Tex. Cent. Ry. Co. v. Oram, 49 Texas 341; Southwestern Gas Co. v. Stanley, 123 Texas 157, 70 S. W. (2d) 413; Fort Worth Elev. Co., v. Russell, 123 Texas 128, 70 S. W. (2d) 397.

MR. JUSTICE SHARP delivered the opinion of the Court.

C. W. Howth filed this suit against the Shell Petroleum Corporation, now by change of name Shell Oil Company, Inc., and others, for cancellation of a mineral lease, and for actual and exemplary damages arising out of the assertion of an adverse claim to mineral land. Some of the defendants filed a cross action. Based upon the answers to the special issues submitted to the jury, the trial court rendered judgment in favor of C. W. Howth against the Shell Petroleum Corporation, Ford Clevenger, O. H. Noland, and C. O. Wier, jointly and severally, for the following items; attorney's fees, $15,000.00; expenses, $1,000.00; damages to his credit, $10,000.00; actual damages, $65.000.00; exemplary damages, $50,000.00. An appeal was taken to the Court of Civil Appeals, and that court held that counsel fees, expenses in preparing the case for trial, and the loss of credit were not recoverable as actual damages. An appeal was perfected to the Court of Civil Appeals by all the defendants, except Ford Clevenger. The judgment of the trial court was reversed and the cause remanded for a new trial as between the parties, except as to the Gregory heirs, other than Ike Gregory and Billie Gregory Bourgeois. 133 S. W. 253. A writ of error was granted.

The Shell Oil Company will be referred to in this opinion as Shell Company, C. W. Howth as Howth, and the ten children of T. W. Gregory as the Gregory heirs. The parties will also be designated as they were in the trial court, Howth as plaintiff, and Shell Company, the Gregory heirs, C. O. Wier, O. H. Noland, and Ford Clevenger as defendants.

The pleadings are very voluminous, and the Court of Civil Appeals in its opinion has set out in detail quotations from such pleadings, as well as the general outline of same, and we refer to such opinion for a detailed statement of the pleadings.

We shall, however, refer to the pertinent parts of such pleadings as relate to the questions discussed in this opinion.

A summary of Howth's pleadings is substantially as follows: In 1931 he owned two tracts of land, containing 117.12 acres, part of the A. Horton Survey in Jefferson County; that in that year he executed an oil and gas lease on the land to Shell Company; that although there had been no drilling on the land in controversy, the Shell Company brought in a producing well about half a mile from this land in July, 1936; that in August, 1936, the Shell Company obtained and placed of record an oil and gas lease on the same land from the Gregory heirs and Mary Gregory; that in 1921 Howth had secured an instrument, a deed absolute on its face, purporting to convey this land from Mary Gregory and the Gregory heirs; that the obtaining of the Gregory lease by the Shell Company was the result of a studied scheme on the part of that Company and other defendants; that it sought out the Gregorys and induced them to make a claim to the land; that this was done for the purpose of asserting an adverse claim to its original lessor, Howth, in repudiation of Howth's title to the land; that the Shell Company in so doing was actuated by malice; that such acts slandered Howth's title, or gave Howth a cause of action for the conspiracy or repudiation; that as a result his interest in the land was greatly damaged; that he was unable to make a sale of any part of the land; and that he was entitled to actual and exemplary damages.

The background of this lawsuit is as follows: The land in controversy is a part of two tracts, known as the J. S. Ward tract and the M. L. Ward tract. These tracts were conveyed to Thomas Gregory in 1917 by two deeds, one from M. L. Ward and wife, and one from J. S. Ward and others. In both these deeds vendor's liens were retained to secure the payment of the purchase price. Both tracts became the community property of T. W. Gregory and his wife, Mary Gregory. T. W. Gregory dies intestate in 1918, survived by his wife and ten children; and Mary Gregory qualified as administratrix of his estate. Under the laws of descent and distribution the property would pass one-half to Mary Gregory and one-half to the Gregory heirs. Article 2578, Vernon's Annotated Texas Civil Statutes.

On September 23, 1921, Mary Gregory, the surviving widow of T. W. Gregory, and seven of the Gregory heirs signed an instrument which purported to be a general warranty deed to

Howth and O'Fiel, in consideration of their defending Ralph Gregory, one of Gregory's adult sons, against a murder charge which had been filed against him. As to many of the heirs, the instrument was defective as a deed. Three of the children, Billie Bourgeois, Ralph Gregory, and Susie Summers, did not sign the instrument. Ike was a minor when he signed. Ruth Wills and Sarah Blevins signed but did not acknowledge the instrument, and their husbands did not join with them in the execution of the deed. Annie Nolte signed and correctly acknowledged the instrument, but the acknowledgment of her husband is defective. Everett, Same, and Hazel signed, but did not acknowledge the instrument. The signature and acknowledgment of the surviving wife, Mary Gregory, is in due form.

J. S. Ward and others, who conveyed one of the tracts in 1917 to T. W. Gregory, reserved a vendor's lien, and the following is a history of that lien: The vendor's lien of J. S. Ward and others was assigned in 1917 to one Broussard. Subsequently, on November 3, 1921, Broussard assigned the vendor's lien notes which remained unpaid to Violet O'Fiel. Broussard had previously filed suit to foreclose the vendor's lien, and in the assignment to Violet O'Fiel he also assigned his cause of action. The style of the case was Broussard v. Mary J. Ward et al, and it was tried in the District Court of Jefferson County. Judgment was rendered on December 20, 1921, ordering a foreclosure, and on February 17, 1922, a constable's deed was executed to Mrs. Violet O'Field, who bought the land in at the foreclosure sale. The fact that the land was sold by the district court, rather than by the probate court, made the sale void under Gregory v. Ward, 118 Texas 526, 18 S. W. (2d) 1049.

We shall now refer to the vendor's lien on the M. L. Ward tract. In February, 1923, M. L. Ward filed suit against Mary Gregory, Administratrix, and others, to foreclose the vendor's lien on the M. L. Ward tract. This suit was styled Ward v. Gregory, and was filed in the district court, even though administration was still pending in the probate court. The district court ordered foreclosure, but, because an appeal was taken, no foreclosure was ever had. This Court, in Gregory v. Ward, supra, held that the judgment and foreclosure of the district court should have been certified to the probate court for observance. This was not done. No foreclosure was ever had in the probate court of the W. L. Ward vendor's lien or judgment. It therefore appears that the sale made under the judgment obtained in the district court was insufficient to

divest title; yet it clearly appears that such suit constituted an election of remedies by the then holder of the notes, and to whose rights Howth succeeded by purchase.

Since the vendor's lien holders of the M. L. Ward and J. S. Ward tracts had attempted foreclosure proceedings (Gregory v. Ward, and Broussard v. Ward), they have exercised their option of remedies, and cannot later rescind the sale. Therefore, the right of rescission was lost when the suit for foreclosure of the lien was instituted, under the doctrine of election of remedies. Hill v. Preston, 119 Texas 522, 34 S. W. (2d) 780; 43 Tex. Jur., 342. Consequently the Gregorys still retain their rights under the M. L. Ward and J. S. Ward deeds; and they therefore still have their interest in the land, subject to the payment of their pro rata part of the vendor's lien notes and interest which they tendered to Howth as mortgages in possession; unless they lost such interest by the subsequent deed or mortgage to Howth and O'Fiel. Should the conveyance from Mary Gregory and some of the Gregory heirs be found to be a deed, Howth would nevertheless have his claim of title by limitation against certain of those Gregory heirs not bound by such deed because of their failure to sign, or because of defective acknowledgments. Hendron v. Yount Lee Oil Co. (Civ. App., writ refused), 119 S. W. (2d) 171.

In October, 1928, M. L. Ward assigned the vendor's lien to W. L. Pondrom; and in November, 1928, Pondrom executed a release of the vendor's lien to C. W. Howth, the instrument reciting that Howth had paid off the vendor's lien notes. After Mary Gregory and some of the Gregory heirs executed the deed or mortgage to Howth and O'Fiel, the latter in February, 1922, deeded both tracts to Violet O'Fiel. She also held the vendor's lien and the constable's deed to the J. S. Ward tract. Violet O'Fiel conveyed an undivided one-half interest in both tracts to Howth in 1924. The other one-half reached Howth through conveyance in November, 1925, from Violet O'Fiel to Security Realty & Development Company, and in 1928 from the Realty Company to Pondrom, and from Pandrom to Howth.

Therefore, in 1931, when Howth executed the oil and gas lease to Shell, he held the vendor's lien on both tracts of land. He had the assignment of the constable's deed on the J. S. Ward tract, which was void under Gregory v. Ward, supra, and he had an instrument, deed or mortgage, of Mary Gregory and certain of the Gregory heirs. He also claimed to have

limitation title under the ten-year statute of limitation. He likewise claimed that the alleged deed from Mary Gregory, as administratrix, was a conveyance in payment of community debts, or debts of the estate, and that, therefore, the joinder of the Gregory heirs became immaterial. This was the state of the title when Howth executed his oil and gas lease to the Shell Company. When Shell Company brought in the producing well about one-half mile away, in July, 1936, it became concerned about the title to the Gregory tract.

On July 22, 1936, a power of attorney, executed by the Gregory heirs and Mary Gregory in favor of O. H. Noland, was filed for record, which gave Noland the power to recover certain tracts of land in the A. Horton 1/4th League in Jefferson County, together with other property. This power of attorney was acknowledged by various parties in July 1936. The Gregory heirs and Mary Gregory also executed an oil and gas lease in favor of Noland, covering two tracts of land, known as the J. S. Ward and the M. L. Ward tracts. The land covered by the Howth lease to Shell Company was a part of these two tracts of land.

On May 18, 1936, Ralph Gregory executed an oil and gas lease to one Nutter, which shows that he was making a claim to the property prior to the transaction here involved.

Thereafter, on August 4, 1936, the Gregory heirs and Mary Gregory, with the exception of Mrs. Summers, executed an oil and gas lease in favor of the Shell Petroleum Corporation, covering the same land as in the Howth lease to Shell Company, which oil and gas lease was duly recorded. The lease to Noland was thereupon released in so far as it covered the land covered in the description in the oil and gas lease given by the Gregory heirs.

On August 13, 1936, Shell Company purchased a lease covering the same land, for a cash consideration of $575.00, from Susie B. Summers, one of the Gregory heirs, and C. O. Wier, to whom she had executed a power of attorney.

The circumstances under which Shell Company obtained these oil and gas leases from Mary Gregory and the Gregory heirs were as follows: Wier was a broker, dealing in oil properties, and Noland was an undertaker, who financed Wier and worked with him in obtaining the power of attorney and the oil and gas lease from all of the Gregory heirs, except Mrs.

Susie Summers. Thereafter Noland, in company with Wier, called upon the Shell Company in an effort to sell to that Company the lease which had been obtained by Noland from the Gregorys. After the lapse of some time, Shell Company decided to purchase this lease, but did not find it in proper form, and told Noland that he would have to get a new lease from the Gregorys in favor of the Shell Company. This was accordingly done, and the Shell Company paid to Noland and the Gregorys the sum of $7,500.00 for this lease. After Shell Company had obtained this lease from all the Gregory heirs except Mrs. Summers, and from Mary Gregory, it purchased a separate lease from Mrs. Summers and her attorney in fact, C. O. Wier.

Thereafter Howth filed this suit in the district court against Shell Company, the Gregory heirs, Clevenger, Noland, and Wier, in which he sought to: (1) have the instruments executed by the Gregorys cancelled as clouds on his title; (2) have his lease to Shell Company cancelled, on the theory that Shell Company had attorned to the Gregorys, and thus repudiated its lease from him; (3) recover damages from Shell Company, both actual and punitive, on the theory that Shell slandered his title by taking these leases from the Gregorys, and that it injured his credit.

The following is a summary of the defects in the title of Howth, which may be enumerated as follows: (a) The deed to Howth and O'Fiel had not been signed by all of the Gregory heirs, and there were other defects in that instrument, as hereinbefore set out. (b) The Gregory heirs were already claiming that the deed had been fraudulently obtained, and furthermore, that it was only a mortgage. (c) The foreclosure proceedings as to both tracts of land were void, and passed not title. (d) The power of attorney to Noland was of record.

The Shell Company at the conclusion of the testimony requested the court to instruct the jury to return a verdict in its favor. The court refused this request. The court instructed the jury: (1) That, as a matter of law, the title to the land involved was, under the undisputed evidence, invested in Howth; (2) that in answer to special issues the jury found that the Shell Company sought to procure the lease executed by those who are known as the Gregory heirs, and Noland and Wier, to itself, for the purpose of asserting an adverse claim against Howth; (3) that Clevenger co-operated with Wier and Noland in securing the lease in controversy to the Shell Company;

(4) that Clevenger shared with Noland and Wier in the financial receipts from the lease executed by the Gregory heirs and by Noland and Wier to the Shell Company; (5) that the Shell Company, by its representative Clevenger, instigated the assertion of claim for the property involved on behalf of the Gregory heirs against Howth; (6) that Shell Company acted maliciously in instigating the assertion of claim for the property on behalf of the Gregory heirs against Howth; (7) that the sales value of the property was defeated by assertion of the claim to same by the Gregory heirs; (8) that the defeat of the sales value was directly and proximately caused by the acts of the Shell Company in instigating the Gregory heirs to assert an adverse claim to said property; (9) that the jury answered "$65,000.00" in reply to Question No. 8, which reads: "What do you find from the preponderance of the evidence to be the reasonable amount of the damages, if any, sustained by plaintiff C. W. Howth by the defeat of the sales value of said property, if it was so defeated?"

By its answer to Question No. 19 the jury found that Shell Company should pay Howth "some amount of money, certain exemplary and punitive damages." And in answer to Question No. 20, the jury fixed the amount at $50,000.00.

Questions Nos. 7 to 15 submitted to the jury the issues of attorneys' fees and expenses incurred by Howth in prosecuting the suit, and "loss of credit" suffered by him by reason of the false and fraudulent claims "advanced by Shell Petroleum Corporation against his land." In response thereto the jury assessed the following damages: Attorneys' fees, $15,000.00; expenses, $1,000.00; damage to credit, $10,000.00.

The trial court decreed that Howth was vested with the legal title to the land involved, and that he was vested with the legal title to the land a long time prior to the time the Gregory heirs and Mary Gregory executed their power of attorney, and prior to the execution of the mineral leases to Shell Company. It was also decreed that the power of attorney and the mineral leases be cancelled and held for naught. The court further decreed, as a matter of law on the facts, that the Gregory heirs take nothing on their cross action against Howth, as to the three tracts of land described in their cross action. The judgment divested the title to the land out of the Gregory heirs and Mary Gregory, and vested it in Howth; and the Gregory heirs and Mary Gregory were perpetually enjoined

from asserting any claim to the land as described in their cross action.

We shall first dispose of the issues arising between Howth and the Shell Company.

Counsel for Howth make the following concessions: (1) That the items of special damages were improper; and as to this they concede the correctness of the opinion of the Court of Civil Appeals. (2) They do not contend that a lessee of an oil and gas lease may not, for the purpose of protecting his title, by an outstanding title; and admit that if this were all that had been done, the Shell Company would not be liable to Howth; but they contend that the evidence shows, and the jury and the Court of Civil Appeals found, that much more had been done.

■ Howth failed to allege in his pleadings the loss of any specific sale or bargain, which resulted from the acts complained of by him. In so far as Howth attempts to recover on the basis of an action for slander of title, his petition is subject to general demurrer. In order to recover in a slander of title suit, the plaintiff must allege the loss of a specific sale. The authorities support the rule that in slander of title cases it is generally held necessary to plead and prove a pending sale, which was defeated by the slander, as a prerequisite to recovery. Houston Chronicle Publishing Co. v. Martin (Civ. App.), 5 S. W. (2d) 170; Humble Oil & Refining Co. v. McLean (Civ. App.) 268 S. W. 179, Id. 280 S. W. 557; 27 Tex. Jur., 791; Wilson v. Dubois, 35 Minn. 471, 29 N. W. 68, 58 Am. Rep. 335; Briggs v. Coykendall, 57 N. D. 785, 224 N. W. 202; Barquin v. Hall Oil Co., 28 Wyo. 164, 201 Pac. 352; Hubbard v. Scott, 85 Or. 1 166 Pac. 33; Stevenson v. Love, 106 Fed. 466; Shaw Cleaners & Dyers, Inc., v. Des Moines Dress Club, 215 Ia. 1130, 245 N. W. 231, 86 A. L. R. 839; 4 Summers, Oil & Gas, p. 44, sec. 660; 37 C. J., 134; 33 Am. Jur., 314.

Both the Howth lease and the leases from the Gregory heirs contained the following clause:

"If lessor owns a less interest in the above described land than the entire undivided and _____qualified fee simple estate therein, then all royalties and all rental and other moneys herein provided shall be paid or delivered to lessor only in the propor-

tion which lessor's interest in said land bears to the entire undivided and unqualified fee simple estate therein."

We have set out in detail the evidence relating to the title acquired by Howth. It clearly shows that the attorneys for the Shell Company were justified in feeling that the title claimed by Howth was subject to numerous objections, and that the Gregory heirs had a substantial interest in said land, unless barred by limitation. Howth was unable to obtain satisfactory affidavits of adverse possession.

The lease executed by Howth to Shell Company was an ordinary lease, and was a conveyance of the minerals. Bailey v. Shell Pet. Corp. (Civ. App., writ refused), 95 S. W. (2d) 982; Jones v. Bevier (Civ. App., writ refused), 59 S. W. (2d) 945.

■ This Court has held that an oil and gas lease like the one involved here is a conveyance of a determinable fee interest in real estate. Under this lease the Shell Company was a co-tenant of Howth. It had a legal right to go upon the land to develop its mineral rights, and such lease did not create, in all respects, the relationship of landlord and tenant. Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021; Hager v. Stakes, 116 Texas 453, 294 S. W. 835; Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 19 S. W. (2d) 27; Texas Company v. Daugherty, 107 Texas 226, 176 S. W. 717, L. R. A. 1917F, 989; Stephens County v. Mid-Kansas O. & G. Co., 113 Texas 160, 254 S. W. 290; 29 A. L. R. 566; Jackson v. United Producers' Pipe Line Co. (Civ. App.), 33 S. W. (2d) 540; Humble Oil & Refining Co. v. McLean (Civ. App.), 268 S. W. 179, Id. (Com. App.), 280 S. W. 557.

■ By virtue of the provisions in the lease above quoted, the fact that Shell Company took the Gregory lease did not make that Company a wrongdoer against the rights of Howth. The Shell Company, as a lessee of Howth, under the provisions of its lease had the right to take a similar lease from an adverse claimant to the property or any portion thereof, in order to protect its own title or interest in the land. Roberts v. Thorn, 25 Texas 728, 78 Amer. Dec. 552; McFarlin v. Leaman (Civ. App.), 29 S. W. 44; Meaders v. Moore, 134 Texas 127, 132 S. W. (2d) 256, 125 L. R. A. 817; Robertson v. Pickrell, 109 U. S. 608, 614, 3 Sup. Ct. 407, 27 L. Ed. 1049; Elder v. Mc-Clasky, 70 F. 529, 547; 43 Tex. Jur., p. 261, sec. 157; 19 Amer. Jur., p. 620, sec. 23. Furthermore, it appears that after Howth

executed the lease to the Shell Company he conveyed a part of his interest in the royalty retained to other parties. These vendees were not made parties to this suit. They were necessary parties to this action to cancel the original lease. Sharpe v. Landowners Oil Assn., 127 Texas 147, 92 S. W. (2d) 435.

The Court of Civil Appeals erred in holding that the rule announced in Humble Oil & Refining Co. v. Kishi (Com. App.), 276 S. W. 190, Id. 291 S. W. 538, is applicable to this case. In our opinion, the facts of this case clearly distinguished it from the Kishi Case. In the Kishi Case the Humble Oil & Refining Company had owned a prior oil and gas lease from Kishi, who owned the surface estate and three-fourths of the mineral estate, and from Lang, the cotenant of Kishi, who owned one-fourth of the mineral estate. The lease held by the Humble Oil & Refining Company expired by its terms. Thereafter, with the consent of Lang, but over the protest of Kishi, the Humble Oil & Refining Company entered on the land and drilled a dry hole. Prior to such drilling the mineral estate had a market value of $1,000.00 per acre, and afterwards it was worthless. The entry of the Humble Oil & Refining Company on the land without the consent of Kishi constituted a trespass and ouster in denial of Kishi's rights. That was the gravamen of the wrong, and a recovery was based upon that ground. In an opinion on motion for rehearing, 291 S. W. 538, it was said:

"The entry upon this land as a cotenant of Kishi would have been lawful and would have occasioned no injury to Kishi's right to the value of his property. The entry made upon this land was unlawful, not because the company had no right to make entry, but because the entry made was in denial of Kishi's right. The character of the entry made was unlawful, and was the sole cause of the injury complained of."

In this case Shell Company had a lease from Howth. It was in possession of the land under a conveyance from him. Shell Company continued to pay or tender delay rentals to Howth, in order to keep the lease alive. So, instead of the Shell Company being liable to Howth, as in the Kishi case, that case served as a reasonable motive for Shell Company to purchase the interest of any cotenant of Howth before it entered upon any drilling program. Certainly it cannot be said, as a matter of law, under the state of this record, that the Gregorys, or some of them, did not have a claim to the land in controversy, and that the Shell Company did not have the right to protect itself from such claim before drilling a well on the land.

Therefore, in order for Howth to recover he must allege and prove that Shell Company was not acting in good faith in purchasing what it believed to be an outstanding title; that the claim of the Gregorys was wholly groundless; and that the Shell Company conspired with Wier and Noland, independent brokers, to encourage the Gregorys to assert a spurious claim, and then purchased and placed of record an oil and gas lease from them, in order to maliciously assert an adverse claim to Howth and repudiate Howth's perfect title to the land.

We have examined the voluminous statement of facts, and we fail to find therein any evidence of a probative nature which supports the verdict of the jury on the questions of the conspiracy and the malicious injury to Howth. There is, at most, a mere suspicion, founded on the evidence that one of the agents of Shell Company, Ford Clevenger, was on friendly terms with the two independent lease men, Wier and Noland, who procured the powers of attorney and the oil and gas leases from the Gregorys. Wier and Noland attempted to sell the leases to the Empire Gas & Fuel Company, but were unsuccessful. They then approached the Shell Company, which agreed to purchase the leases. Clevenger was sent around with Wier to get a new lease direct to Shell Company, because that company was not satisfied with the form of leases obtained by Wier and Noland. The uncontradicted evidence that Clevenger accepted $1,000.00 from Wier and Noland of the money paid by Shell Company to them for the Gregory leases was not evidence of any nefarious or malicious act of the Shell Company. At most, it is evidence of misconduct or unfaithfulness of the agent to his employer. On the other hand, the record is replete with evidence that the Shell Company was acting in good faith. It still paid or tendered to Howth his rental, on the basis of a full 1/8th royalty on the entire tract.

Howth's predecessor in title was T. W. Gregory, who died intestate. Howth claimed under a conveyance from the widow and children of Gregory. But the Gregorys on the trial of this case uniformly testified that this instrument, though a deed on its face, was intended merely as a mortgage or security to stand good for payment of $1,000.00 attorney's fees to the law firm of Howth & O'Fiel, for defending one of the Gregory heirs in a felony case. If the instrument be considered as a deed, then there is a serious doubt as to its binding effect on the Gregory heirs as hereinbefore set out. Howth also claimed under superior vendor's liens on the land; but a foreclosure of one

of the tracts of land was attempted, and, as stated above, this Court held in Gregory v. Ward, supra, that the district court, in which the suit was filed, had no jurisdiction to order the sale of the property.

A foreclosure was likewise attempted on the other tract of land in the case of Broussard v. Ward, but substantially the same facts were present in that case as were involved in Gregory v. Ward.

We briefly recite these facts to show that there was room for doubt as to Howth's title, and that the claim of the Gregory heirs was not wholly fictitious. In fact, letters written by Howth to the Shell Company show that he recognized the gravity of the Gregory claim, and he offered to give 1/128th of his royalty interest to settle with the Gregorys. He also secured affidavits relating to limitation, which he sent to the Shell Company in order to quiet any doubt as to his title.

Certainly under this record it could not be held that, as a matter of law, the entire title to this property vested in Howth, and that the Shell Company was subject to damages for obtaining the leases from the Gregory heirs. Since Howth failed to allege a cause of action in slander of title, and failed to prove an unlawful conspiracy against him, or repudiation against his title, the judgment in his favor finds no basis to sustain it.

When we review the entire testimony introduced in this case, we are of the opinion that the probative force of the testimony does not establish a cause of action in favor of Howth against the Shell Company and others. If the evidence only raises a surmise or suspicion of the existence of a fact sought to be established, courts will not permit a judgment to rest on such fact. Joske v. Irvine, 91 Texas 574, 44 S. W. 1059; Waco Drug Co. v. Hensley (Com. App.), 34 S. W. (2d) 832, and cases cited.

It clearly appears from this record that this case has been fully developed, and no reason has been shown by this case should be remanded. Willoughby v. Townsend, 93 Texas 80, 53 S. W. 581; Gilmore v. Dennison, 131 Texas 398, 115 S. W. (2d) 902; State v. Merchant et al, 38 Texas Civ. App. 226, 85 S. W. 483; 3 Tex. Jur., p. 1234, sec. 863.

As we understand the record, Clevenger did not perfect his appeal from the judgment of the trial court. However, as we

interpret its opinion, the Court of Civil Appeals reversed the judgment in favor of Howth against Clevenger, and remanded the case. Clevenger does not seek any relief in this Court, and that judgment will not be disturbed. The judgment rendered in the trial court in favor of Howth against Shell Company, Wier, and Noland will be reversed, and judgment will be rendered herein in favor of Shell Company, Wier, and Noland.

We shall now discuss the issues arising between Howth and the Gregory heirs. The trial court erred in not submitting to the jury the question of whether or not the instrument executed by the Gregorys to Howth and O'Fiel was a deed or a mortgage. Hazel Gregory, who negotiated with Howth for the law firm of Howth & O'Fiel, testified that the fee was set at $1,000.00. She said that they did not have $1,000.00. Then she testified that Howth asked her if the Gregorys would be willing to put up the land as security. She further testified that it was with that understanding that she executed the instrument and induced the other Gregorys to sign it. Ralph Gregory testified that O'Fiel stated to him while in jail that the Gregory family had put the land up as security. Others of the Gregorys uniformily testified that the instrument was intended as security or as a mortgage.

We think there was sufficient testimony to take the question as to whether or not the deed was a mortgage to the jury for determination. Young v. Blain (Com. App.), 245 S. W. 65; Watson v. Toler (Civ. App.), 153 S. W. (2d) 506; 29 Tex. Jur., 799 et seq. The mere failure to fix a time certain at which the debt, if there was a debt, was payable is not fatal, because the law reads that payment must be made within a reasonable time. 10 Tex. Jur., p. 413, sec. 237.

As against Howth's contention, and the holding of the Court of Civil Appeals that Howth had title to the land by adverse possession for a period of ten years, under Article 5510, we do not believe that it can be held, as a matter of law, that he obtained the title by the ten years statute of limitation; but there was ample evidence to take that question to the jury. Witnesses testified that during the period from 1926 to 1928 there was no fence on the north end of the tract; which was used for grazing purposes. Others testified that "there was an old dilapidated fence," "with some posts up and some down," and "with some old wire up and down the line," and that the fence would not turn cattle. There was positive testimony that

during the above period the land was open range, and that cattle went in and out of it at will. Richards v. Smith, 67 Texas 610, 4 S. W. 571; Walker v. Maynard, 31 S. W. (2d) 168; 2 Tex. Jur., 93.

It is also contended that Mrs. Gregory, as administratrix of the insolvent estate of T. W. Gregory, deceased, had the power to convey the land to Howth in payment of community debts, or debts of the estate. This Court has repeatedly held that the survivor in community has the power to convey and sell community property in payment of community debts. Grebe v. First State Bank of Bishop, 136 Texas 226, 150 S. W. (2d) 64. T. W. Gregory died in 1918. Ralph Gregory was of age at the time of the murder charge and at the time of the conveyance to Howth and O'Fiel. There was no order of the probate court allowing the conveyance of the land in payment of debts of the estate. The deed in controversy was executed in 1921, years after the death of T. W. Gregory, and it is hard to conceive how this could be classified either as a community debt or as a debt against the estate. Green v. Cass County State Bank (Civ. App.), 7 S. W. (2d) 620; 14 Tex. Jur., p. 606, sec. 771.

In the event the jury should find that the conveyance from the Gregorys to Howth and O'Fiel was a mortgage, Howth would then be a mortgagee in possession. The question would then arise as to the period within which the Gregorys would have the right to redeem the land. Howth contends that that right has been lost under the four years statute of limitation. Article 5529. This contention is overruled. Smith v. Olivarri (Civ. App.), 127 S. W. 235; Stafford v. Stafford, 96 Texas 106, 70 S. W. 75; Carl v. Settegast (Com. App.), 237 S. W. 238. Furthermore, Howth could not claim to hold the land by adverse possession to the mortgagors, without repudiation of the relationship of Mortgagor and mortgagee. Hendron v. Yount Lee Oil Co. (Civ. App., writ refused), 119 S. W. (2d) 171, 174; 41 C. J., 615; 36 Amer. Jur., 828. The burden would rest upon Howth to prove such repudiation.

■ If Howth be a mortgagee lawfully in possession, he has the right to retain possession until the mortgage debt is paid in full, even though the debt may be barred by the statute of limitation. Jasper State Bank v. Braswell, 130 Texas 549, 111 S. W. (2d) 1079, 115 A. L. R. 329, and see annotations 115 A. L. R. 339; Conner Bros. v. Williams, 130 Texas 572, 112 S. W. (2d) 709; 29 Tex. Jur., 880; 36 Amer. Jur., p. 824, sec. 268. There are

other legal questions between Howth and the Gregorys; but, in view of the fact that the case will be retried in the lower court, we shall not pass on them at this time.

The judgment rendered in the trial court in favor of Howth against the Shell Company, Wier, and Noland is hereby reversed, and judgment is hereby rendered that Howth take nothing in his suit against Shell Company, Wier, and Noland. The judgment of the Court of Civil Appeals reversing and remanding the cause against Clevenger will not be disturbed. The judgments of both the trial court and the Court of Civil Appeals with reference to the Gregory heirs and Mary Gregory are hereby reversed, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Opinion delivered January 14, 1942.

Rehearing overruled March 4, 1942.