

## Office of the Attorney General
### State of Texas
January 28, 1992

**DAN MORALES**
ATTORNEY GENERAL

Honorable Burton B. LeTulle
Chairman, Board of Directors
Lower Colorado River Authority
P. O. Box 220
Austin, Texas 78767

Opinion No. DM-78

Re: Whether "working interests" owned
by the Lower Colorado River Authority
in oil and gas wells in Fayette County
are subject to ad valorem taxation
(RQ-2163)

Dear Mr. LeTulle:

You have requested our opinion as to whether "working interests" owned by
the Lower Colorado River Authority (hereinafter LCRA) in oil and gas wells in
Fayette County are subject to ad valorem taxation. You explain that a "working
interest" is "generally synonymous with the term leasehold interest. The working
interest (or leasehold) owner has the exclusive right to exploit the minerals on the
land." You indicate that LCRA purchased these leasehold interests in 1989, and
currently owns interests varying between 24 and 100 percent in several oil and gas
wells in Fayette County. You contend that this property is exempt from ad valorem
taxation, a position which is challenged both by the Fayette County Appraisal
District and the LaGrange Independent School District.

Section 2(a) of article 8 of the Texas Constitution provides that "the
legislature may, by general laws, exempt from taxation public property used for
public purposes." Pursuant to that constitutional authority, the legislature has
enacted section 11.11(a) of the Tax Code, which provides:

> (a) Except as provided by Subsections (b) and (c) of this
> section, property owned by this state or a political subdivision of
> this state is exempt from taxation if the property is used for
> public purposes.

Article XI, section 9, of the Texas Constitution specifies that "property devoted exclusively to the use and benefit of the public shall be exempt from . . . taxation."[1]

In 1945, the Texas Supreme Court ruled directly on the status of LCRA for purposes of exemption from taxation under the constitution. In *Lower Colorado River Auth. v. Chemical Bank & Trust Co.*, 190 S.W.2d 48, 50 (Tex. 1945), the court declared:

> It thus appears . . . that LCRA is a governmental agency serving a public purpose in controlling and storing the flood waters of the Colorado River and that all benefits derived from its efforts are public benefits. Hence, its property is public property devoted exclusively to public use and is exempt from taxation under Art. XI, Sec. 9, of the Constitution.

This case does not end our inquiry, however. The *LCRA* case did not consider the type of facts at issue here. *See State v. University of Houston*, 264 S.W.2d 153, 155 (Tex. Civ. App.--Galveston 1954, writ ref'd n.r.e.) (court held that it was "uncontroverted" that certain mineral interests in land held by the University of Houston were "devoted exclusively to the use and benefit of the public").

Finally, in recent years the courts have emphasized the significance of the "used for public purposes" portion of the test.[2] For example, two courts have

---

[1]Attorney General Opinion JM-523 (1986) found that the "used for public purposes" test of article VIII, section 2, and the "devoted exclusively to the use and benefit of the public" test of article XI, section 9, are equivalent. In both cases, the constitution requires more than that the property be merely *owned* by a public body; it must also be used for *public purposes.*

[2]Section 11.11(d) of the Tax Code provides:

> (d) Property owned by the state that is not used for public purposes is taxable. Property owned by a state agency or institution is not used for public purposes if the property is rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state agency.

declared that a medical office building owned by a political subdivision but leased to private physicians was not tax-exempt, even though the *income* from the property was used exclusively for public purposes. In *Grand Prairie Hosp. Auth. v. Tarrant Appraisal Dist.*, 707 S.W.2d 281, 284 (Tex. App.--Ft. Worth 1986, writ ref'd n.r.e.), the court said that when a hospital authority owned a medical building that it leased in part to physicians for their own commercial purposes, the building was not being used exclusively for the use and benefit of the public, and therefore, it was not entitled to a tax exemption; *see also Satterlee v. Gulf Coast Waste Disposal Auth.*, 576 S.W.2d 773 (Tex. 1978); *Grand Prairie Hosp. Auth. v. Dallas County Appraisal Dist.*, 730 S.W.2d 849 (Tex. App.--Dallas 1987, writ ref'd, n.r.e.).

In the situation you present, LCRA uses a relatively small portion of the gas it extracts for use in its power plants, and sells the remainder of the gas, and all of the oil, on the open market. LCRA uses the revenue obtained from these sales to purchase fuel for its power plants "and to off-set expenses incurred by LCRA in the generation and distribution of electricity." Because these circumstances are sufficiently similar to those at issue in the two cases involving Grand Prairie Hospital Authority, *supra*, the taxing entities have challenged LCRA's claim to an exemption. Such challenge fails to consider the crucial difference between land, on the one hand, and an oil and gas leasehold interest, on the other.[3]

An oil and gas lease, despite its name, is a sale or conveyance of real property, and it operates to transfer the oil and gas in place to the lessee. *Lockhart*

---

Apparently, this particular test is applicable only to state agencies and institutions rather than to all public bodies. However, the *principle* of section 11.11(d) is recognized as applicable, in the *Grand Prairie* cases, to other kinds of public entities.

[3]LaGrange Independent School District contends that LCRA's purchases of leasehold interests in oil and gas wells exceed its constitutional and statutory authority, and that such leasehold interests constitute "investments" which no political subdivision in Texas is authorized to make. We decline to comment on this position, except to note that section 2(e) of the statute creating LCRA authorizes the district "to acquire by purchase, lease, gift or in any other manner provided by law and to maintain, use and operate any and all property of any kind, real, personal or mixed, or any interest therein . . . necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act." Acts 1934, 43d Leg., 4th C.S., ch. 7, § 2, at 20-21 (act creating LCRA); Acts 1975, 64th Leg., ch. 74, § 1, at 180 (current language of section 2 of the act). Section 2(g) thereof authorizes LCRA to "sell or otherwise dispose of any property of any kind, real, personal or mixed, or any interest therein, which shall not be necessary to the carrying on of the business of the District." Acts 1934, *supra*, at 21; Acts 1975, *supra*, at 181.

*v. Williams*, 192 S.W.2d 146 (Tex. 1946); *Gulf Oil Corp. v. Marathon Oil Co.*, 152 S.W.2d 711 (Tex. 1941). A lessor in an oil and gas lease, *i.e.* the owner of the surface estate, and the lessee, *i.e.* the owner of the mineral estate, are cotenants. *Shell Oil Co. v. Howth*, 159 S.W.2d 483 (Tex. 1942). The lessee has the right to develop his mineral estate, including the right to an easement in the surface estate for purposes of the mineral grant. *Getty Oil Co. v. Jones*, 470 S.W.2d 618 (Tex. 1971). In the case before us, LCRA is the owner of mineral estate, and the *lessee* under the terms of the oil and gas lease.

The second *Grand Prairie* case instructs that the test for determining whether public property is exempt from taxation is "whether the property in question is held only for public purposes and is devoted exclusively to the use and benefit of the public." 730 S.W.2d at 851. For the reasons stated above, we believe that the facts of the *Grand Prairie* cases are distinguishable from the facts of the situation at issue here. Furthermore, the *Grand Prairie* cases turned on the fact that public property was used for the purposes of private business. Therefore, the cases reasoned, the property was not devoted exclusively to the use and benefit of the public. It is not readily apparent in the case at hand that public property is similarly being put to private use. Thus, we conclude that the holdings of the *Grand Prairie* cases do not dictate that the LCRA's mineral interests are subject to taxation as a matter of law.

The determination as to whether the LCRA holds its mineral interests only for public purposes and devotes those interests exclusively to the use and benefit of the public involves questions of fact that cannot be resolved in the opinion process. To make such a determination, a finder of fact would likely consider such factors as the extent to which private entities are involved in the various stages of operation of the wells at issue, how and by whom the oil and gas is sold on the open market, and how the revenues from the sale of oil and gas are used. As we cannot inquire into these issues in the opinion process, we are unable to ultimately determine whether the LCRA's mineral interests are tax exempt.

## SUMMARY

Whether leasehold interests owned by the Lower Colorado River Authority in oil and gas wells in Fayette County are exempt from ad valorem taxation raises questions of fact that cannot be resolved in the opinion process. The holdings of the *Grand Prairie* cases do not dictate that the LCRA's mineral

interests are subject to taxation as a matter of law. If the LCRA holds its working interests in oil and gas wells exclusively for the use and benefit of the public, those interests are exempt from ad valorem taxation.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General