SANTA FE ENERGY OPERATING PARTNERS, L.P., Appellant,

v.

Oscar CARRILLO, Sr. and Evangelina Carrillo, Appellees.

No. 04–95–00648–CV.

Court of Appeals of Texas, San Antonio.

April 2, 1997.

Rehearing Overruled June 23, 1997.

Steven B. Harris, Ernest W. Kohnke, Boyer, Ewing & Harris Incorporated, Houston, Homer E. Dean, Jr., Dean & Hunt, P.C., Alice, for Appellant.

J.G. Adami, Jr., Warburton, Adami, McNeill, Paisley & McGuire, P.C., Alice, Jaime E. Carrillo, Ricardo O. Carrillo, Carrillo Law Office, Kingsville, for Appellees.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

HARDBERGER, Chief Justice.

The appellant, Santa Fe Energy Operating Partners, L.P. (Santa Fe), entered an oil and gas lease with the appellees, Oscar Carrillo, Sr.·and Evangelina Carrillo, for certain acreage the Carrillos claimed by adverse possession. When Santa Fe obtained additional leases from the record title holders, the Carrillos sued Santa Fe for tortious interference with prospective contract and slander of title. In the same action, they also sought a declaratory judgment based on adverse possession. Following a jury trial, the trial court rendered judgment in the Carrillos' favor on all causes of action. Because Santa Fe's actions were justified as a matter of law, we reverse and render that portion of the judgment addressing the torts. We affirm that portion of the judgment addressing adverse possession.

### Summary of Facts

In 1919, A.J. Heintz divided a 640–acre tract in Duval County into one-acre tracts, some of which were sold to various grantees. Although planned as a subdivision, the land was never occupied by these grantees. A.J. Heintz later deeded one-half of the remaining lots to his son Alfred. When A.J. Heintz

died, the other one-half of the remaining lots passed to his wife, who in turn left her interest to her nieces and nephews.

In 1962, Alfred Heintz sold his lots to Oscar and Evangelina Carrillo, who fenced the entire 640 acres for agricultural and cattle-grazing purposes and began to purchase the outstanding interests owned by Alfred's cousins. During the following years, the Carrillos made improvements to the property, paid taxes, leased all or portions of the acreage, and granted easements across the acreage.

On January 1, 1989, the Carrillos and Santa Fe executed a three-year oil and gas lease for the deep rights to the entire 640–acre tract, plus an adjacent 160–acre tract. Among other things, the lease contained a proportionate reduction clause that permitted Santa Fe to reduce the royalty to the Carrillos in the event they owned less than the warranted lease. *See* HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL & GAS LAW § 686.11, at 444–45 (abridged ed. 1993) (describing the proportionate reduction clause).

Mr. Carrillo told Santa Fe's agent, J. Mark Smith, that he did not hold deeds to certain portions of the 640 acres. According to Mr. Carrillo, he specifically told Santa Fe not to do anything to "foul up my title." Instead, Mr. Carrillo asked that he be supplied with the names and addresses of anyone Santa Fe might find in the chain of title.

In May 1991, Santa Fe's district land manager, Martin Black, sent Mr. Carrillo a letter identifying the tracts held by other record title holders and stating that Santa Fe had taken leases from some of those individuals. The letter also relayed the opinion of Santa Fe's attorney that the tracts in question could not be claimed by adverse possession because the land had not been separately fenced. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.031 (Vernon 1986) (providing that interior lots be separately fenced or used for agriculture or manufacturing to be claimed by adverse possession).

Mr. Carrillo denied receiving Mr. Black's letter and asserted that he did not know about the other leases until he met with Santa Fe's landman in June 1991. Mr. Carrillo said he called Mr. Black to complain about the third-party leases as a cloud on his title. According to Mr. Carrillo, Mr. Black told him that no leases or deeds had been taken in Santa Fe's name and assured him that if any had been taken, they would be assigned to the Carrillos. Mr. Black denied making these statements.

Mr. Carrillo admitted that he received a copy of the title opinion prepared by Santa Fe's attorney on July 22, 1991. As author of the title opinion, Hugh Willey found that record ownership was far from "uniform." Accordingly, he divided the 640 acres into twenty-five separate tracts to demonstrate that the Carrillos owned partial or full record title to 607 acres but no record title to 33 acres. In addition to reviewing the deeds and leases in the chain of title, Mr. Willey also reviewed a draft of an affidavit of possession prepared by Mr. Carrillo's attorney. Mr. Willey remarked that "[i]f the facts contained in the … Affidavit submitted by Mr. Lloyd are true, and can be proved in a court, your examiner agrees that the facts recited in the Affidavit support Mr. Carrillo's claim" of adverse possession to the full 640 acres. However, Mr. Willey was unwilling to rely solely upon the affidavit as "the record owners … granted oil and gas leases on at least three previous occasions and … paid taxes on the lands they claim[ed]." Mr. Willey recommended that any production proceeds be suspended until conflicts were resolved by adjudication or quit claim in the Carrillos' favor. Two days after Mr. Willey drafted the title opinion, the Carrillos filed their affidavit of use and possession.

Santa Fe continued to acquire three-year leases from the record title owners or their heirs and, in one instance, acquired a warranty deed (hereinafter collectively called the "disputed leases"), all of which were recorded in Duval County. On January 1, 1992, Santa Fe's lease with the Carrillos expired by its own terms, and the Carrillos declined Santa Fe's offer to extend it. The disputed leases, however, did not expire until later dates. Santa Fe never released those leases nor did it convey them to the Carrillos.

After the Santa Fe/Carrillo lease expired, Michael Lucente approached the Carrillos about leasing a portion of their 640–acre tract for a shallow well. However, the negotiations were never completed because Mr. Lucente felt the disputed leases conflicted with the Carrillos' ownership.

The Carrillos then sued Santa Fe for slander of title and tortious interference with prospective business relations. They also sued the record title holders and their heirs, who later settled by executing quit claim deeds in the Carrillos' favor. A jury found that the Carrillos had satisfied both the ten and twenty-five year adverse possession statutes and that Santa Fe had slandered and tortiously interfered with the Carrillos' title. After denying Santa Fe's motion for judgment notwithstanding the verdict, the trial court rendered judgment for $715,000 in actual damages plus $133,837 in attorney's fees.

### Discussion

Santa Fe argues that, at the time of trial, the Carrillos held an unperfected adverse possession claim that could not be interfered with or slandered as a matter of law. In other words, until the Carrillos perfected their claim by deed or adjudication, their title was unmarketable and could not be damaged. Because we conclude that Santa Fe's actions were justified, we assume, without deciding, that the Carrillos' title was sufficient to enable them to pursue their claims for tortious interference and slander of title.[1]

■ In addressing the remainder of Santa Fe's arguments concerning the legal sufficiency of the evidence, we consider only the evidence and inferences that tend to support the jury's findings and disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex. 1988). If we find more than a scintilla of probative evidence to support the findings, we must overrule the no evidence challenge.

*Felker v. Petrolon, Inc.*, 929 S.W.2d 460, 463 (Tex.App.—Houston [1st] Dist 1996, writ denied).

### 1. Tortious Interference

In its first two points of error, Santa Fe contends the trial court erred by submitting a jury question about tortious interference and by denying Santa Fe's motion for judgment notwithstanding the verdict. Santa Fe maintains there is no evidence that it interfered, without legal justification, with the Carrillos' prospective contracts or leases.

■ To prove tortious interference with prospective business relations, the Carrillos' were required to show (1) the reasonable probability that a contract would be created; (2) Santa Fe's intentional act to prevent the contract's formation; (3) Santa Fe's lack of justification; and (4) damages. *See Winston v. American Medical Int'l, Inc.*, 930 S.W.2d 945, 953 (Tex.App.—Houston [1st Dist.] 1996, n.w.h.); *Texas Oil Co. v. Tenneco Inc.*, 917 S.W.2d 826, 831 (Tex.App.—Houston [14th Dist.] 1994, writ granted).[2] Santa Fe's actions would be justified if it had a right to interfere with the prospective contract as a matter of law or if it had a colorable legal right it exercised in good faith. *Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex.1996); *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 211 (Tex.1996); *Bennett v. Computer Assocs. Int'l, Inc.*, 932 S.W.2d 197, 202 (Tex. App.—Amarillo 1996, n.w.h.).

■ Santa Fe claims that it was legally justified to take the disputed leases by virtue of the proportionate reduction clause contained in its lease with the Carrillos. To support its contention, Santa Fe cites *Shell Oil Co. v. Howth*, 138 Tex. 357, 159 S.W.2d 483, 489 (1942), in which C.W. Howth claimed a tract of land by both deed and adverse possession. In 1931, Howth leased his property to Shell Oil Company. *Id.* 159 S.W.2d

---

1. It is not clear whether an adverse possessor may bring these causes of action. *Compare Colquhoun v. Webber*, 684 A.2d 405, 409–10 (Me. 1996) (holding that adverse possession will support a claim for slander of title), *with Lopez v. Adams*, 116 N.M. 757, 759–60, 867 P.2d 427, 429–30 (1993) (holding that adverse possession will not support a claim for slander of title).

2. Because these elements of tortious interference with prospective business relations were submitted to the jury without objection, we accept them only for purposes of this appeal.

at 486. When Shell brought in a producing well in July 1936, "it became concerned about the title" and, in August, it took a lease from Howth's grantors, the Gregory heirs. *Id.* at 486–87. Because of numerous defects in Howth's deeds and his inability to obtain affidavits of adverse possession, the Supreme Court found that Shell was "justified" in believing the Gregory heirs had an interest in the property; and, because the Howth/Shell lease contained a proportionate reduction clause, the Supreme Court held that Shell "had a right to take a similar lease from an adverse claimant to the property or any portion thereof, in order to protect its own title or interest in the land." *Id.* at 490–91; *see also* HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL & GAS LAW § 686.11, at 444–45 (abridged ed. 1993) (noting that a proportionate reduction clause authorizes the lessee to take a protection lease without being liable for slander of title); W.L. SUMMERS, 3A THE LAW OF OIL & GAS § 609.2, at 455 (1958) (same).

The Carrillos maintain that *Shell Oil Co. v. Howth* is distinguishable because the Gregory heirs asserted their claim to the property before executing their lease with Shell. Specifically, the Gregory heirs executed two other leases and claimed that Howth's deeds were fraudulently obtained. *Shell Oil Co. v. Howth*, 159 S.W.2d at 488–89. In contrast, the Carrillos claim that the record owners in this case had not made claims to the property before being approached by Santa Fe. Even if true,[3] this distinction is immaterial. In *Parker v. Standard Oil Co.*, 250 S.W.2d 671, 680 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.), the court held that the lessee had the right to protect itself by taking leases from adverse claimants, "actual or potential."

■ The Carrillos also contend that *Shell Oil Co. v. Howth* is distinguishable because Santa Fe acquired a warranty deed in addition to the leases. We cannot say, however, that a warranty deed violates the rule in *Shell Oil Co. v. Howth* because a "protection lease" may take the form of a quit claim

lease or an ordinary lease. *Cf.* HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL & GAS TERMS (6th ed. 1984) (defining protection leases as a quit claim or ordinary lease); *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex.1982) (describing an oil and gas lease as a sale of an interest in land, vesting the lessee with title to the oil and gas in place).

In this case, Santa Fe's lease with the Carrillos included a proportionate reduction clause and no clause specifically prohibiting Santa Fe from taking additional leases. Under *Shell Oil Co. v. Howth*, we hold that Santa Fe was justified, as a matter of law, in taking the leases from the record owners of the property claimed by the Carrillos. Therefore, the trial court erred in submitting the tortious interference issue to the jury and in denying Santa Fe's motion for judgment notwithstanding the verdict. Accordingly, we sustain Santa Fe's first and second points of error.

**2. Slander of Title**

■ In its fourth point of error, Santa Fe asserts the trial court erred in submitting a question about slander of title because there is no evidence that Santa Fe slandered the Carrillos' title to the 640 acres. We agree.

■ To prove slander of title, the Carrillos must show that Santa Fe published false statements maliciously, and these statements caused special damages to the Carrillos' estate or interest in land. *Storm Assocs., Inc. v. Texaco, Inc.*, 645 S.W.2d 579, 588–89 (Tex.App.—San Antonio 1982), *aff'd sub nom. Friedman v. Texaco, Inc.*, 691 S.W.2d 586 (Tex.1985). "Malice," for purposes of this tort, is defined as making false statements regarding title in absence of color of title or a reasonable belief that parties have title. *Id.* Because we have held that Santa Fe was entitled to execute the disputed leases as a matter of law, we also hold, as a matter of law, that Santa Fe reasonably believed the record owners held title. Therefore, the trial court erred in submitting

---

**3.** There was evidence that some record title holders had executed leases in 1970. Additionally, other record title holders had paid taxes after

1992, and one title holder had been billed for taxes beginning in 1982.

the issue to the jury, and we sustain Santa Fe's fourth point of error.

### 3. Adverse Possession

■ In its tenth and eleventh points of error, Santa Fe contends the trial court erred in submitting jury issues about adverse possession because there is legally insufficient evidence to support the Carrillos' claim under either the ten or twenty-five year statute of limitations. We disagree.

■ As the party seeking to establish title by limitation, the Carrillos had the burden to prove adverse possession by a preponderance of the evidence. *Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex.1990); *see also* TEX.CIV.PRAC. & REM.CODE ANN. § 16.026 (ten-year limitations) (Vernon 1986); TEX. CIV.PRAC. & REM.CODE ANN. § 16.027 (twenty-five year limitations) (Vernon 1986). "Adverse possession" means "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX.CIV.PRAC. & REM.CODE ANN. § 16.021(1) (Vernon 1986). However, under the ten-year statute of limitations, possession of an interior tract is not adverse unless the interior tract is separately fenced or unless "at least one-tenth of the interior tract is cultivated and used for agricultural purposes or is used for manufacturing purposes." *Id.* § 16.031(b); *see also Richey v. Miller,* 142 Tex. 274, 177 S.W.2d 255, 258 (1944) (explaining how this provision protects small land owners).

Most of the tracts not held of record by the Carrillos are completely surrounded by property owned of record by the Carrillos. There is no evidence that the Carrillos separately fenced the interior tracts nor is there evidence that any land was used for manufacturing. However, in 1962, the Carrillos fenced the entire 640 acres with barbed wire capable of turning cattle and later added an interior fence dividing the property in half, north to south. Since that time, the Carrillos have used the entire acreage for grazing cattle. In addition, Mr. Carrillo testified that "almost all" of the land was cultivated. When reviewing these facts in their most favorable light, we conclude that legally suffi-cient evidence supports the jury's implicit finding that at least one-tenth of the interior tracts were used for agricultural purposes for more than ten years. *See Fish v. Bannister,* 759 S.W.2d 714, 718–19 (Tex.App.—San Antonio 1988, no writ) (adversity shown when land used as a unit for grazing). We also conclude this evidence supports the jury's finding that the Carrillos adversely possessed the disputed property for more than twenty-five years.

■ Santa Fe contends that adverse possession is defeated by the quit claim settlement deeds and a deed, recorded by the Carrillos in 1991, evidencing their purchase of certain property from a record title holder. A possessor's acknowledgment of title in another will defeat the adverse possession claim if the acknowledgment is made before the limitations period passes. *Wolgamot v. Corley,* 523 S.W.2d 491, 493 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.). In this case, however, the Carrillos' possession began in 1962 and matured, at the latest, in 1987. Thus, the deeds recorded in the 1990s cannot defeat the Carrillo's title. *See Auchterlonie v. McBride,* 705 S.W.2d 183, 186 (Tex.App.—Houston [14th Dist.] 1985, no writ).

■ Santa Fe also asserts that the Carrillos disclaimed open and hostile possession by executing oil leases that referred to any property "now owned or hereinafter acquired." Because this Mother Hubbard language traditionally operates to transfer limitations title, we cannot interpret it to defeat the Carrillos' adverse possession claim. *See* Bruce M. Kramer, *The "Mother Hubbard" or "Cover All" Clauses in Mineral Deeds and Leases,* 13 E.MIN.L.FOUND. §§ 12.01, 12.07[2] (1992).

Because legally sufficient evidence supports the jury's adverse possession finding, we overrule Santa Fe's tenth and eleventh points of error. In a twelfth point of error, Santa Fe argues the trial court erred in awarding attorney's fees because "no legal basis existed for such award." Because the legal basis for this award is the jury's adverse possession finding, TEX.CIV.PRAC. & REM.CODE ANN. § 16.034 (Vernon 1986), we

also overrule Santa Fe's twelfth point of error.

### Conclusion

Having sustained Santa Fe's first, second, and fourth points of error concerning tortious interference and slander of title, we find it unnecessary to address Santa Fe's remaining points of error regarding damages for those torts. We reverse that portion of the trial court's judgment awarding damages to the Carrillos and render judgment that the Carrillos take nothing from Santa Fe by their claims for tortious interference and slander of title.

Because we overruled Santa Fe's tenth through twelfth points of error regarding adverse possession, we affirm that portion of the trial court's judgment declaring that the Carrillos established limitations title and awarding attorney's fees on that basis.